[Cite as *In re I.B.*, 2015-Ohio-4181.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 102373 and 102853**

# IN RE: I.B.
# A Minor Child

[Appeal By M.L., Grandmother]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division and Juvenile Court Division
Case Nos. 2014 GRD 199316 and AD-14912510

**BEFORE:** E.T. Gallagher, J., Celebrezze, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 8, 2015

**ATTORNEY FOR APPELLANT**

L. Bryan Carr
1392 SOM Center Road
Mayfield Heights, Ohio 44124


**ATTORNEY FOR APPELLEE**

Van M. Lowry
Van M. Lowry & Associates
Hanna Building, Suite 248
1422 Euclid Avenue
Cleveland, Ohio 44115

**For C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Yvonne C. Billingsley
Assistant Prosecuting Attorney
Cuyahoga County Division of
Children and Family Services
3955 Euclid Avenue, Room 305E
Cleveland, Ohio 44115

**Guardian Ad Litem**

Amy L. Nash
1180 Winston Road
South Euclid, Ohio 44121

**Also listed**

Michael Fields
2994 East 128th Street
Cleveland, Ohio 44120

EILEEN T. GALLAGHER, J.:

**{¶1}** In this consolidated appeal, appellant, M.L. ("appellant"), appeals a probate court order that awarded appellee, M.F. ("appellee"), guardianship of I.B., a minor child. She also appeals an order of the juvenile court that dismissed her complaint for legal custody of I.B. Between the two appeals, appellant raises the following five assignments of error:[1]

> 1. The juvenile court erred in dismissing appellant's complaint and terminating the temporary custody order, as the juvenile court had (and continues to have) exclusive jurisdiction over the minor child.
>
> 2. The trial court erred in denying appellant's motion to certify jurisdiction; the trial court lacked jurisdiction to rule and establish a guardian for the child; the trial court's guardianship order is void.
>
> 3. The trial court erred in awarding guardianship to [M.F.] and utilized an incorrect test to analyze guardianship.
>
> 4. The trial court erred (and violated Civ.R. 53) in issuing a defective judgment entry.
>
> 5. Evidentiary rulings prejudiced appellant.

**{¶2}** We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

**{¶3}** I.B. lost her mother, R.B. ("Mother"), to cancer in June 2014. I.B., who was

---

[1] Appellant actually assigns six errors between the two appeals. However, the sole assignment of error in the juvenile court appeal mirrors the second assignment of error in the probate court appeal. We therefore discuss these assigned errors together and count them as one assignment of error. The other assigned errors are discussed out of order for the sake of methodology.

12 years old at the time, was left with no parent because her father's whereabouts were unknown. At the time of Mother's death, Mother and I.B. had been living with appellee for approximately three months. Appellee is Mother's ex-boyfriend and the father of Mother's other two children.

{¶4} Mother nominated appellee to serve as I.B.'s guardian in her last will and testament. Appellee, who was willing and able to serve as I.B.'s guardian, filed an application for guardianship in the Cuyahoga County Probate Court following Mother's death. Appellant, I.B.'s maternal grandmother, also filed an application to be appointed I.B.'s guardian. The court employed Kathleen Russo ("Russo"), a social worker, to investigate the applicants, complete home studies, and make a recommendation.

{¶5} The court held a hearing on the competing applications for guardianship. Russo testified that she interviewed both applicants, visited their homes, and investigated their backgrounds and economic circumstances. Appellee had three criminal convictions that he did not disclose on his guardianship application. Russo discovered from the common pleas court docket that appellee pleaded guilty to felonious assault in 2001 and possession of drugs in 2004. Russo also discovered that appellee pleaded guilty to one count of misdemeanor domestic violence in 2012. Russo did not think appellee's prior convictions should disqualify him from serving as I.B.'s guardian because he is a loving father, and the convictions resulted from sporadic incidents spread out over almost 12 years. (Tr. 22-23.)

{¶6} Appellee is the father of I.B.'s two half siblings. Russo testified that I.B. is

bonded with her half siblings, and that Mother wanted I.B. to remain with her siblings after her death. I.B. calls appellee "Dad," and they appear to have a father-daughter relationship. A therapist who was providing intense in-home counseling for appellee's son indicated to Russo that appellee is an attentive father who is very engaged with his children. (Tr. 42.) The therapist also indicated that if appellee is appointed I.B.'s guardian, she will provide counseling services to I.B. in addition to her brother. Appellee and the children were also receiving grief counseling through The Hospice of the Western Reserve.

{¶7} Russo reported that appellee's home appeared safe and appropriate. The home is equipped with smoke detectors and fire extinguishers. The bedroom I.B. shares with her half-sister is furnished with two beds. Appellee told Russo, and testified at trial, that he does not keep guns in the home because he worries about the children's curiosity of them.

{¶8} Appellee testified that he met Mother when she was three months pregnant with I.B. and has known I.B. her whole life. I.B. continued to live with appellee after her Mother's death and was still living with him at the time of the hearing and was enrolled in a school in appellee's neighborhood. Appellee testified that he walks I.B. and the other children to school in the morning, and his girlfriend, M.H., walks them home in the afternoon because appellee is usually working at that time of day.

{¶9} Appellee testified that he can read and write "a little bit," but never graduated from high school and does not have a GED. (Tr. 125.) However, he earns a living

working on houses that are being rehabilitated. Appellee also receives income from two rental houses he owns in Cleveland. M.H. lives in the upstairs apartment of the duplex where appellee lives with his children. Appellee pays a mortgage on the house and, according to appellee, M.H. pays rent and watches the children when he is not home.

{¶10} Appellee testified that he views I.B. as his own daughter. Mother gave appellee the original copy of her will because she wanted appellee to be I.B.'s guardian. (Tr. 105.) Appellee acknowledged that he cannot offer I.B. the same kinds of material things that appellant can provide, but he can meet her needs and be a father. (Tr. 104.) He explained:

> I can give her what she needs, you know. I can't take her to Disney World like her grandparents, but I can take her to the park and give her ice cream. I mean, I can be father as I've been doing for the last 12 years. I mean, I've been there for the last 12 years. I mean, I can — that's all I can do is just be a father to her. I can give her— make sure she has clean clothes, new shoes on her feet, you know, go to school.

{¶11} Appellant testified that she lives in Cleveland Heights, where she has lived with her husband ("Husband")[2] for over 20 years. Husband is an electrician who has worked for ArcelorMittal for approximately 30 years. Husband has medical insurance through his employer and, if appellant is appointed I.B.'s guardian, I.B. will be added to his medical insurance plan. Appellant and Husband live a comfortable, middle-class lifestyle.

{¶12} Mother and I.B. lived with appellant and Husband for over a year following

---

[2]    Appellant's husband is I.B.'s step-grandfather.

I.B.'s birth. Mother moved out of appellant's home to live with her grandmother because she and appellant disagreed on matters that were important to Mother. I.B. continued to have a relationship with appellant after moving out and spent weekends with her when Mother was having her other babies. (Tr. 253.) Mother and I.B. moved back home with appellant in June 2013, where they remained until March 2014, when they again moved out because of conflict. This time, Mother moved in with appellee. Appellant testified that I.B. has her own bedroom in appellant's house, and that her half-siblings also have a bedroom for when they come to visit.

{¶13} According to appellant, appellee is preventing her from maintaining a relationship with I.B. Appellant testified that, at the time of the hearing on September 26, 2014, she had not seen I.B. since June 2014. She testified that if she were I.B.'s guardian she would foster the relationships between I.B. and her half-brother and half-sister because they are also appellant's grandchildren. She explained: "Those are my grandchildren, I want to see my grandchildren." (Tr. 256.) Appellee testified that he encourages I.B.'s relationship with appellant and pays her telephone bill so she can communicate with all of her extended family.

{¶14} Appellant's son testified that appellant had a close relationship with I.B. According to appellant's son, appellant "always pushed her to do good in school." (Tr. 234.) He explained:

> She kept her active and she would teach her like she did me when I was little. She taught her to have to clean, you still have to do chores as a child, you still have to do your — anything that an adult says you should listen to, she was teaching her manners, but they always talked, they had fun, they'd

sit and watch movies.

{¶15} Both appellant and Husband testified they were concerned about I.B. having a relationship with appellant's other son, R.B., because he is a convicted Tier III sex offender. Appellant testified that she no longer has a relationship with R.B. because she does not approve of his lifestyle. (Tr. 258.)

{¶16} I.B. and one of her aunts sing in a choir of which R.B. is the choir director. Appellee testified he had heard that R.B. was a sex offender but did not know whether it was true and knew little about the alleged circumstances of his conviction. Appellee further stated that I.B. did not spend time with R.B., nor does she speak to him on the phone. However, he admitted that R.B. has picked I.B. up at home to take her to choir practice when her aunt was unavailable to take her.

{¶17} Appellant's mother, I.B.'s great-grandmother, testified in support of appellee's application rather than that of her own daughter. She believed appellee would provide a good home for I.B., that he has been a good father, and that separating I.B. from her siblings would be "devastating." I.B.'s maternal great aunt, S.B., also testified in favor of appellee. When asked her opinion of appellee, she stated:

> [Appellee] is a quiet person, he doesn't talk unless he has something to say. But I found him to be very good with the children and he does a good job with them. When I go over there, you know, they're playing, they're happy, and he's the only father that [I.B.] has ever known.

(Tr. 196-197.)

{¶18} Russo testified that both appellant and appellee were suitable guardians. Despite appellee's criminal history, Russo recommended that appellee be appointed I.B.'s

guardian because he is "capable and sincere in his efforts to provide a stable and nurturing home." Russo testified she was also concerned appellant would separate I.B. from her siblings if she were appointed guardian and recognized that Mother wanted appellee to be I.B.'s guardian because she wanted I.B. to live with her siblings. I.B. did not testify at the trial. However, according to Russo, I.B. expressed a desire to live with appellee and that she considers appellee's home to be her home.

{¶19} Following the hearing, appellant filed a complaint for legal custody in the Juvenile Court Division of the Cuyahoga County Common Pleas Court. The complaint alleged that I.B. was a neglected, dependent child, and sought legal custody of I.B. Two days later, appellant filed a motion to certify jurisdiction to the juvenile court in the probate court. Meanwhile, the juvenile court issued an order granting temporary custody of I.B. to appellant. However, the juvenile court later dismissed the complaint and terminated the temporary custody order for lack of jurisdiction, and the probate court denied appellant's motion to certify jurisdiction to the juvenile court.

{¶20} In November 2014, a probate court magistrate issued a decision awarding guardianship of I.B. to appellee. The magistrate's decision states, in relevant part:

> While not related by blood, [appellee] is the only father [I.B.] has ever known. He presented as a very loving and involved parent with [I.B.]'s best interests in mind. [Appellee] is clearly not a perfect person, but has done his best with [I.B.] and desires to keep her with her half-siblings. After suffering the tragedy of losing her mother, it would be devastating to tear her away from the place she considers her home and from her half-siblings and to require her to start over again in a new school. [Appellee] has made every effort to keep [I.B.] involved with her maternal family. Many of [appellant]'s own family members testified in support of [appellee]'s Application.

Based on the nomination in the Last Will and Testament of [Mother], considering the Court Investigator's report and recommendation as required by law, including the reported preference of the minor child and the testimony presented in this case, it is the recommendation of this Magistrate that the Application for Appointment of Guardian of the Person of [I.B.] filed by [appellee] be granted without bond. Ohio law requires that the nomination of the decedent should be followed if it is in the child's best interests.

**{¶21}** The trial court determined that "immediate relief was justified" and issued its decision simultaneously with the magistrate's decision. Appellant filed a notice of appeal before the trial court could rule on objections to the magistrate's decision. Following a limited remand to rule on the objections, appellant's two consolidated appeals are now ripe for review.

## II. Law and Analysis

### A. Jurisdiction

**{¶22}** In the sole assignment of error raised in appellant's appeal from the juvenile court, appellant argues the juvenile court erred in dismissing her complaint and terminating the temporary custody order. In the second assignment of error presented in her appeal from the probate court, appellant argues the probate court erred in denying her motion to certify jurisdiction to the juvenile court. In both assignments of error, she contends the juvenile court had exclusive jurisdiction pursuant to R.C. 2151.23(A) to determine the custody of I.B. because she alleged I.B. to be a neglected and dependant child.

**{¶23}** R.C. 2151.23(A)(1) provides that the juvenile court has "exclusive original jurisdiction" over a variety of actions including complaints seeking custody of "any child

who, on or about the date specified in the complaint, * * * is alleged * * * to be a[n] * * * abused, neglected, or dependent child." Appellant's complaint for legal custody alleged that I.B. was a dependent child.

**{¶24}** The probate court, however, awarded the guardianship of I.B. to appellee pursuant to R.C. 2101.24(A)(1)(e), which provides that the probate court has exclusive jurisdiction to appoint and remove guardians. The parties' respective guardianship applications charged the probate court with the responsibility of determining who should serve as I.B.'s guardian. However, a guardian of a minor child has legal custody of the child. R.C. 2111.07; *see In re L.H.*, 8th Dist. Cuyahoga No. 97977, 2012-Ohio-4062. Legal custody of a child and guardianship of a child are exactly the same in all respects but name, and the two statutes provide each court with "exclusive jurisdiction." The two provisions seemingly create concurrent and potentially conflicting jurisdiction in the two courts.

**{¶25}** However, R.C. 2151.23(A)(2) provides that the juvenile court has exclusive jurisdiction "*to determine the custody of any child not a ward of another court* of this state." (Emphasis added.) This provision is apparently aimed at preventing forum shopping and conflicting judgments by precluding two courts of competent jurisdiction from simultaneously deciding identical issues. Indeed, the Ohio Supreme Court reached this conclusion in *In re Poling*, 64 Ohio St.3d 211, 594 N.E.2d 589 (1992).

**{¶26}** In *Poling*, the Ohio Supreme Court was asked to decide whether a juvenile court has jurisdiction to determine the custody of dependent children where the domestic

relations court had previously determined and granted custody of the children to their

mother. The *Poling* court concluded that, although a domestic relations court retains

continuing jurisdiction to modify its custody decision, the juvenile court also has

jurisdiction to make custody awards related to children who are properly subject to its

jurisdiction. *Id.* at 215. However, the court explained:

> If children whose custody is determined under a divorce decree, pursuant to R.C. 3109.04 are construed to be "wards" of that court, then a juvenile court would not have jurisdiction to determine their custody under R.C. 2151.23(A)(2).

The *Poling* court concluded that the children in that case were not "wards" of the

domestic relations court and explained:

> When a court in a divorce case grants custody of a child, the court is not traditionally placing itself in the position of guardian of that child. Rather, in a broad sense the court is making a judicial determination as to whom the child's custodian is to be, whether it be a parent or otherwise. Nor does the court consider the child a "ward" of that court, even though the court retains jurisdiction to modify custody and support. Hence, we conclude that the phrase any child not a "ward of another court" in R.C. 2151.23(A)(2) cannot be construed to prohibit a juvenile court from changing custody of children subject to a divorce decree entered pursuant to former R.C. 3109.04.

{¶27} In contrast to the domestic relations court, R.C. 2111.50(A)(1) expressly

provides that the probate court "is the superior guardian of wards who are subject to its

jurisdiction." R.C. 2111.01(B) defines "ward" as "any person for whom a guardian is

acting or for whom the probate court is acting pursuant to section 2111.50 of the Revised

Code." Appellee's guardianship application invoked the probate court's jurisdiction and

made I.B. a ward of the probate court. *See In re Clendenning*, 145 Ohio St. 82, 92, 60 N.E.2d 676 (1945).

{¶28} Thus, pursuant to R.C. 2151.23(A)(2), the juvenile court could not determine I.B.'s custody because she was a ward of the probate court when appellant filed her complaint for legal custody. *See In re Miller*, 33 Ohio App.3d 224, 515 N.E.2d 635 (8th Dist.1986) (holding that once the probate court appoints a guardian for a minor, the juvenile court is without jurisdiction to grant custody of the ward to another person, until the guardianship has been terminated).

{¶29} Moreover, even if the juvenile court maintained concurrent jurisdiction to determine the custody issue in this case, the Ohio Supreme Court has held that

> [a]s between courts of concurrent jurisdiction and coextensive jurisdiction, the one whose power is first invoked by the institution of proceedings and the service of the required process acquires the right to adjudicate upon the whole issue and to settle the rights of the parties to the exclusion of all other tribunals.

*State ex rel. Balson v. Harnishfeger*, 55 Ohio St.2d 38, 39, 377 N.E.2d 750 (1978).

{¶30} Appellee's guardianship application was pending before appellant filed her complaint for legal custody in the juvenile court. Indeed, appellant did not file the complaint until two days after the probate court trial. Appellant's complaint seeking legal custody in the juvenile court is the kind of forum shopping barred by virtue of R.C. 2151.23(A)(2). The juvenile court properly dismissed the case for lack of jurisdiction and the probate court's order appointing appellee as I.B.'s guardian is a valid judgment.

{¶31} The sole assignment of error in appellant's appeal from the juvenile court's judgment, and the second assignment of error in her appeal from the probate court's

judgment are overruled.

## B. Court's Journal Entry

**{¶32}** In the third assignment of error in appellant's probate appeal, she argues the probate court's final order granting the guardianship is defective and violated Civ.R. 53 because it did not "adopt, reject, or modify" the magistrate's decision.

**{¶33}** The court's final order was issued simultaneously with the magistrate's decision. Instead of issuing a separately filed journal entry, the court's journal entry granting appellee's guardianship application and denying appellant's application appears at the end of the magistrate's decision. As such, appellant argues that the trial court's final order, and appellant's objections thereto, are "of no effect and, indeed, futile."

**{¶34}** However, in a space following the magistrate's decision but before the court's final order, the following language appears in bold:

> Counsel and parties will take notice that under the provisions of Rules 73 and 53(D)(4)(e)(ii) of the Ohio Rules of Civil Procedure, immediate relief is justified and Letters of Guardianship will be issued forthwith. Objections to this decision may be filed with[in] 14 days commencing from the date on which this decision is filed, but the relief ordered herein is subject to automatic stay caused by the filing of timely objections.

**{¶35}** Civ.R. 53(D)(4)(e)(i) authorizes the court to issue an interim order before the parties have had time to file objections to a magistrate's report, and states:

> The court may enter a judgment either during the fourteen days permitted by Civ.R. 53(D)(3)(b)(i) for the filing of objections to a magistrate's decision or after the fourteen days have expired. If the court enters a

judgment during the fourteen days permitted by Civ.R. 53(D)(3)(b)(i) for the filing of objections, the timely filing of objections to the magistrate's decision shall operate as an automatic stay of execution of the judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered.

**{¶36}** Nothing in the magistrate's decision or the court's interim order precluded appellant from filing objections to the magistrate's decision. Indeed, Civ.R. 53(D)(4)(e)(i) contemplates the filing of objections after the court's judgment where the court files its judgment before the time for filing objections has expired. Furthermore, we remanded the case to the probate court to rule on appellant's objections before proceeding with the appeals, and the probate court overruled appellant's objections and adopted the magistrate's order. Therefore, the probate court's judgment granting guardianship of I.B. to appellee is a valid, final order.

**{¶37}** Appellant also argues, within this assigned error, that the trial court erred in appointing appellee as guardian pursuant to R.C. 2111.02(B). However, R.C. 2111.02(B) governs the appointment of "a limited guardian with specific limited powers." The probate court awarded the guardianship of I.B. to appellee pursuant to R.C. 2111.02(A), which does not limit the guardian's powers. The propriety of the court's judgment appointing appellee to serve as I.B.'s guardian pursuant to R.C. 2111.02(A) and other applicable code provisions is the subject of appellant's first assignment of error in her appeal from probate court. We will therefore discuss appellant's argument regarding the propriety of appellee's appointment as guardian with that assigned error.

**{¶38}** Accordingly, the third assignment of error is overruled.

### C. Evidentiary Rulings

**{¶39}** In the fourth assignment of error, appellant argues she was unfairly prejudiced by improper evidentiary rulings. She contends the probate court erroneously allowed (1) undisclosed witnesses to testify at trial, and (2) the admission of hearsay and character evidence.

**{¶40}** The admission or exclusion of evidence is within the sound discretion of the trial court, and we will not disturb the trial court's judgment on evidentiary matters absent an abuse of that discretion. *O'Brien v. Angley*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (1980). The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Jakubs v. Borally*, 8th Dist. Cuyahoga No. 101756, 2015-Ohio-2696, ¶ 12. "The abuse of discretion standard is a highly deferential standard, and this court is not free to merely substitute its judgment for that of the trial court." *Kontra v. Kontra*, 8th Dist. Cuyahoga No. 98126, 2012-Ohio-4293, ¶ 13; *Rex v. Conner*, 8th Dist. Cuyahoga Nos. 81210 and 81810, 2003-Ohio-4561, ¶ 19.

### 1. Undisclosed Witnesses

**{¶41}** Appellant argues she was prejudiced by the testimony of undisclosed witnesses who were permitted to testify at trial over her objection.

**{¶42}** Civ.R. 26 governs discovery, and its purpose is to prevent trial by ambush. *Anderson v. Nunnari*, 8th Dist. Cuyahoga No. 77241, 2000 Ohio App. LEXIS 5337, * 8 (Nov. 16, 2000). To that end, Civ.R. 37 permits a court to exclude testimony of an

undisclosed witness as a discovery sanction. *Huffman v. Hair Surgeon*, *Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). However, the exclusion of reliable and probative evidence is a severe sanction. Thus, the exclusion of witnesses as a sanction is permitted only when the nondisclosure of witnesses causes unfair surprise that results in prejudice to the opposing party. *Id*.

{¶43} In this case, the record is devoid of any evidence that appellee willfully concealed the identities of his witnesses. The undisclosed witnesses consist of appellant's own children, her mother, and one of Mother's closest friends. Since all but one of the undisclosed witnesses were members of appellant's own family, it seems unlikely that their testimony was a surprise. Indeed, they could have supported appellant's guardianship application if they believed she was a more suitable guardian than appellee. Further, none of the testimony portrayed appellant in a negative light. The testimony of the witnesses, including that of the one non-family member, was limited to their observations and opinions of appellee as a father figure in I.B.'s life. This is exactly the kind of testimony one would expect at a guardianship hearing.

{¶44} Moreover, appellant has not made any argument either in the trial court or on appeal to demonstrate she was unfairly surprised or prejudiced by these witnesses. Therefore, the trial court acted within its discretion when it allowed these undisclosed witnesses to testify at the guardianship hearing.

**2. Character Evidence and Hearsay**

{¶45} Appellant argues a letter from the assistant principal at I.B.'s school was inappropriately admitted into evidence without proper authentication or acceptance by the court. She contends the letter constituted hearsay and character evidence.

{¶46} In the letter, the assistant principal states that I.B. "is molding into a great young lady," and that "she sets a great example for her younger siblings" who also attend the school. The letter also indicates that the school is aware of Mother's death and that the school provides a variety of services to assist her "not only academically but socially/emotionally as well."

{¶47} The letter, which was marked as plaintiff's exhibit No. 2, was offered but never accepted into evidence. Appellant objected to its admission into evidence, but the court never made a ruling. There is also no indication as to whether the court considered the letter or not. The magistrate's decision does not mention it in her decision, but recounts witness testimony that I.B. is performing well in school and that appellee is involved in her school.

{¶48} Nevertheless, even if the court considered the letter, its admission into evidence was harmless. It offered no opinion on the appropriateness of appellee as a guardian, nor did it mention appellant. It simply described I.B.'s character, which was not the subject of this debate. Arguably the comment regarding the school's services would weigh in favor of appellee because the school is in appellee's school district. However, appellee testified I.B. was receiving counseling services and help with her

homework.  Therefore, any consideration of this letter by the trial court was duplicative of other evidence in the record and therefore harmless.

**{¶49}** The fourth assignment of error is overruled.

### D.  Guardianship Appointment

**{¶50}** In appellant's first assignment of error in the probate appeal, appellant argues the probate court failed to apply the correct test when it found appellee the more suitable guardian.  She contends the appointment of appellee as I.B.'s guardian is not in I.B.'s best interest.

**{¶51}** "In making a determination as to who should serve as a guardian, the probate court's primary responsibility is to ensure that the person appointed will act in the best interests of the ward."  *In re Guardianship of Hilt*, 6th Dist. Sandusky No. S-14-010, 2015-Ohio-3186, ¶ 20, quoting *In re Guardianship of Thomas,* 148 Ohio App.3d 11, 2002-Ohio-1037, 771 N.E.2d 882, ¶ 96 (10th Dist.).  The probate court's determination regarding a guardianship is generally within the sound discretion of the trial court subject to reversal only for an abuse of discretion.  *In re Guardianship of Muehrcke*, 8th Dist. Cuyahoga No. 81353, 2003-Ohio-176, ¶ 21.

**{¶52}** R.C. 2111.121(A) provides, in relevant part, that "[a] person may nominate in a writing * * * another person to be the guardian of the nominator's minor * * * children."  R.C. 2111.121(B) instructs the probate court that "[e]xcept for good cause shown or disqualification, the court shall make its appointment in accordance with the person's most recent nomination."  Mother nominated appellee to serve as I.B.'s

guardian in her will. Thus, pursuant to R.C. 2111.121(B), the probate court was required to appoint appellee as guardian unless there was a good reason not to, i.e., it would not be in the child's best interest.

{¶53} The probate court found that appellant could provide a stable home, health insurance, a good education, and the love of a grandmother. She could also give I.B. more material things and vacations out of town. Appellant focuses on the court's finding that appellee is "not a perfect person." However, appellee can also provide a stable home, a decent education, and fatherly love. Although appellee admitted he could not take I.B. to Disney World, he could provide love and support while guaranteeing that she grow up with her siblings, which was her mother's wish.

{¶54} Thus, the trial court found both applicants to be suitable guardians. Neither guardian would be against I.B.'s best interest. However, because the probate court was required to defer to the nomination of appellee in Mother's will, "except for good cause shown," it was compelled to award the guardianship to appellee.

{¶55} Moreover, the magistrate's decision clearly shows that I.B.'s best interest was the driving factor in its analysis. For example, the court noted that "[a]fter suffering the tragedy of losing her mother, it would be devastating to tear her away from the place she considers her home and from her half siblings and to require her to start over again in a new school." The court also acknowledged that it considered I.B.'s stated preference and found it significant that "[m]any of [appellant's] own family members testified in

support of [appellee]'s application." Thus, the court considered both the nomination in Mother's will and I.B.'s best interest. Indeed, the magistrate's decision concludes with a statement that "Ohio law requires that the nomination of the decedent should be followed if it is in the child's best interest."

**{¶56}** The trial court applied the appropriate test for appointing a guardian of a minor child. Furthermore, the evidence supports the court's conclusion that awarding the guardianship to appellee was in I.B.'s best interest.

**{¶57}** The first assignment of error is overruled.

**{¶58}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court, probate and juvenile divisions, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., A.J., and
ANITA LASTER MAYS, J., CONCUR