[Cite as *In re Guardianship of Williams*, 2022-Ohio-617.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE THE GUARDIANSHIP OF            :
TERRI M. WILLIAMS

                                     :            No. 110781

[Appeal by Norma Zielke]             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 3, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2021GRD2583818

---

*Appearances:*

Ronald C. Swencki, *for appellant.*

Cleveland-Marshall College of Law, Appellate Practice Clinic, and Doron M. Kalir, *for appellee.*

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Appellant Norma Zielke brings this appeal challenging the trial court's judgment granting appellee Leila Benton's application to be appointed guardian of alleged incompetent Terri M. Williams (hereinafter "ward") and denying appellant's application. Appellant argues that the trial court's judgment appointing Benton as the ward's guardian was not supported by sufficient evidence and that the trial

court's judgment denying appellant's application was against the manifest weight of the evidence. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} This appeal involves a family dispute regarding the appointment of a guardian of the ward. Appellant is the ward's mother. Benton is the ward's aunt.

{¶ 3} The ward was born in January 1977. She has severe mental retardation and hypertension. When the ward was five years old, her grandmother, Helen LaShore, was appointed as her guardian. LaShore was Benton's mother.

{¶ 4} LaShore was the ward's primary caregiver. LaShore passed away in August 2020. Following her death, Benton took over as the ward's primary caregiver.

{¶ 5} On March 3, 2021, Benton filed an application for appointment of guardian. On April 20, 2021, appellant filed an application for appointment of guardian.

{¶ 6} A magistrate held a Zoom hearing on the competing applications on May 26, 2021. The following parties testified during the hearing: (1) Benton, (2) appellant, (3) Joseph Williams, the ward's father and Benton's brother (hereinafter "Williams"), (4) Louise Cialkowski, a marriage and family therapist, and (5) Devon Benton, Benton's son (hereinafter "Devon"). During the hearing, Williams made an oral application for appointment of guardian.

{¶ 7} Benton testified that her mother, LaShore, raised both her and the ward. Benton explained that she always lived with LaShore and the ward in order

to help LaShore with the ward's care. Benton, the ward, and LaShore had been living together in the same home for the past 12 years. When LaShore was the ward's primary caregiver, Benton assisted with driving, picking up medication and food, and taking the ward to medical appointments. Benton testified that at this point, she has more of a "sister" relationship with the ward than an aunt-niece relationship.

{¶ 8} LaShore passed away in August 2020. Following her passing, Benton has provided full care for the ward. Benton prepares meals for the ward, helps the ward bathe, and completes other chores related to the ward's care. Benton testified that the ward is comfortable in and familiar with her home, and Benton understands the ward's needs.

{¶ 9} Benton testified that appellant has never been involved in the ward's life, only visits every couple of years, and rarely communicates with the ward on the phone. Benton stated that appellant had substance abuse issues that began early in the ward's life.

{¶ 10} Appellant testified that she has resided in Las Vegas, Nevada for the past 28-30 years. She explained that she left the state of Ohio due to family conflict and hostility. Appellant wanted the ward to move to Las Vegas and reside with her and her friend in a two-bedroom condo. Appellant testified that she has been involved in the ward's life and that she calls the ward every day at 5:00 p.m. Appellant asserted that she has completed a drug treatment and counseling program. Appellant's goal is to have the ward reevaluated by state developmental

disability services providers in Nevada, and to engage the ward in services that will enable her to be as independent as possible.

{¶ 11} Appellant presented the testimony of Cialkowski. Cialkowski opined that appellant's condo was appropriate for the ward. She testified that the state of Nevada offers services for developmentally disabled individuals. Cialkowski was willing to make arrangements for the ward to engage in the services offered.

{¶ 12} Williams testified that as the ward's father, he should be the ward's guardian. Williams stated that he has been living at the house with LaShore, Benton, and the ward since 2018. He sleeps on the couch. Williams is not employed and does not drive. Aside from occasionally preparing meals and, at the instruction of LaShore, administered medication to the ward, Williams has not provided any other care for the ward. He has not taken the ward to medical appointments, picked up the ward's medication, or assisted the ward with her hygiene.

{¶ 13} Devon testified that he does not live in the house with Benton, but he visits on a daily basis. Devon asserted that he sees appellant "once every few years." He testified that appellant "never called until [LaShore] passed[.]" Finally, Devon stated that appellant has not been in the ward's life for his entire life. Devon was 36 years old at the time of the hearing.

{¶ 14} The court investigator also submitted a report, pursuant to R.C. 2111.041, regarding Benton's guardianship application. The investigator visited Benton's house in March 2021. Benton and Williams were present at the time. The investigator did not identify any concerns regarding sanitation or risk of accidents

in the report. The report indicates that the utilities in the home were working. The investigator's report concludes that there were no indications or allegations of substance abuse, nor any allegations or indications of abuse, neglect, or exploitation of the ward. The investigator recommended that guardianship of the ward's person was necessary.

{¶ 15} The magistrate issued a decision on June 8, 2021, in which she found that (1) the ward was incompetent, in need of a guardian, and would benefit from the appointment of a guardian; (2) Benton was a suitable and reasonably disinterested person to serve as guardian; and (3) evidence of a less-restrictive alternative was either not presented, or not in the ward's best interests. Based on the testimony presented by the parties, the magistrate concluded that Benton was the most appropriate person to serve as guardian of the person of the ward. The magistrate concluded, in relevant part,

> [Appellant] has admittedly not lived in the same state as [the ward] for the past 28-30 years. She has visited and telephoned only sporadically. Her intentions for [the ward] may be good, but she has not been a caregiver for [the ward] and cannot be said to be aware of [the ward's] specific care needs. Also, her care plan is to move [the ward] across the country to a completely unfamiliar state and a new home; this may not be in the best interests of [the ward] who has resided with her Ohio family group her entire life. For these reasons, it is concluded that [appellant] is not the most appropriate person to serve.
>
> * * *
>
> Finally, [Benton] has resided with [the ward] for most of her life and has been consistently involved in [the ward's] care, even while [LaShore] was the primary caregiver. During that time, [Benton] provided assistance with meals, hygiene, medication pick-up, grocery purchase and pick-up, and transportation to medical appointments.

Since the death of [LaShore], [Benton] has taken on the role of full caregiver.

The familiarity and comfort of [the ward], now age 44, with [Benton]; with this house; and with the existing patterns of family interactions is an important consideration in [the ward's] well-being. It is also noted that the Court Investigator reported no problems with the condition of the house or the relationship between [Benton] and [the ward]. It is concluded that it would be in [the ward's] best interest to maintain the consistency of her care and her known familial interactions. For all of the reasons, it is concluded that [Benton] is the most appropriate person to serve as guardian.

{¶ 16} On June 16, 2021, appellant filed notice to take the deposition of Benton. Benton's deposition was scheduled for June 18, 2021. The transcript of Benton's deposition was not filed in the probate court until September 23, 2021 — after the trial court issued its final judgment in the case, and after appellant filed the instant appeal. Because Benton's deposition transcript was not considered by either the magistrate or the trial court, the deposition transcript is not part of the record and cannot be reviewed by this court for the first time on appeal. *See State v. Davis*, 8th Dist. Cuyahoga No. 110301, 2021-Ohio-4015, ¶ 22. "Appellate review is limited to the record, and a reviewing court cannot add any new matter to the record that was not part of the trial court's proceedings or decide the appeal on the basis of any new matter not before the trial court." *Id.*, citing *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph two of the syllabus.

{¶ 17} On June 24, 2021, appellant filed objections to the magistrate's decision. Therein, appellant argued, generally, that Benton's home was not appropriate for the ward. Appellant appeared to argue that the home was also not appropriate for the ward based on the fact that Williams was a full-time resident. In

support of her objections, appellant attached a list of court cases in which Williams was purportedly charged. Appellant asserted that most of the charges were "alcohol and drug related," but she alleged that the cases also involved "numerous physical violence charges[.]" Appellant also appeared to argue that it was not in the ward's best interest to appoint Benton as her guardian because Benton also cares for her grandson, who also resides in the home and is totally disabled. Finally, appellant argued that she was the "best person for [the ward] to live with" because the ward will have her own bedroom and bathroom in the Nevada home and the ward can engage in services that will be beneficial to her.

{¶ 18} It is unclear whether appellant filed the transcript from the magistrate's hearing in support of her objections, as required by Civ.R. 53(D)(3)(b)(iii). *Belovich v. Crowley*, 8th Dist. Cuyahoga No. 109523, 2021-Ohio-2039, ¶ 42, citing *State ex rel. Pallone v. Ohio Court of Claims*, 143 Ohio St.3d 493, 2015-Ohio-2003, 39 N.E.3d 1220 ("On appeal, if a party failed to provide a transcript to the trial court as required in Civ.R. 53(D)(3)(b)(iii) when objecting to the decision of the magistrate, that party waives any appeal as to those findings other than plain error.").

{¶ 19} Appellant attached portions of the transcript to her objections (Exhibits A, D, and E). However, the trial court's judgment entry provides, in relevant part, "[a] digital recording was made of the [magistrate's] hearing, though no transcript of the proceeding was filed with this Court as of the date of this [July 28, 2021] Entry." The trial court's docket indicates that the transcript of the

magistrate's hearing was filed in the probate court on September 9, 2021 — after appellant filed her objections to the magistrate's decision, after the trial court issued its final judgment in the case, and after appellant filed the instant appeal.

{¶ 20} On July 28, 2021, the trial court overruled appellant's objections and adopted the magistrate's decision. The trial court granted Benton's application to be appointed guardian of the person of the ward. The trial court denied the applications of appellant and Williams.

{¶ 21} The trial court concluded that (1) the guardianship was necessary, (2) clear and convincing evidence existed that the ward is incompetent pursuant to R.C. 2111.01(D), (3) there was no less-restrictive alternative to a guardianship, and (4) Benton is suitable to serve as the ward's guardian.

{¶ 22} The trial court concluded that the ward "has familiarity and comfort with Ms. Benton and should remain in her care. Ms. Benton has an understanding of the care that [the ward] needs[.]" The trial court also explained that although services would be available to the ward in Nevada, "existing and continued patterns of family interactions and care are important in considering [the ward's] well-being."

{¶ 23} Regarding appellant's objections to Benton's home, the trial court concluded that the court's investigator did not have any concerns with Benton's home, the individuals residing therein, or the sleeping arrangements. Regarding appellant's objections to Benton providing care to both the ward and her grandson, the trial court concluded, "the testimony established that [the ward] is capable of

assisting in some activities of daily living including, but not limited to, washing her own clothes, using the microwave to prepare food, dressing herself, and bathing herself."

{¶ 24} The trial court rejected appellant's objections about Williams residing in Benton's home. Appellant failed to present any evidence that Williams was convicted of any criminal charges, much less how those convictions would affect Benton's ability to care for the ward.

{¶ 25} On August 26, 2021, appellant filed the instant appeal challenging the trial court's July 28, 2021 judgment. Appellant assigns two errors for review:

I. Appellant's rejection is against the manifest weight of the evidence.

II. [Benton's] appointment is not supported by sufficient evidence.

## II. Law and Analysis

### A. App.R. 12 and 16(A)(7)

{¶ 26} As an initial matter, we note that appellant's brief fails to comply with App.R. 12 and 16(A)(7).

> Pursuant to App.R. 12(A), this court is instructed to "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16[.]" App.R. 12(A) further provides that "errors not specifically pointed out in the record *and separately argued by brief* may be disregarded" by the reviewing court. *N. Coast Cookies v. Sweet Temptations*, 16 Ohio App.3d 342, 343, 476 N.E.2d 388 (8th Dist.1984); *Martin v. Cuyahoga Cty. Prosecutor*, 8th Dist. Cuyahoga No. 102628, 2015-Ohio-4589, ¶ 10. Accordingly, an appellant's assignments of error should designate specific rulings that the appellant challenges on appeal. If the appellant fails to comply with App.R. 12, the appeal may be dismissed.
>
> "The appellant bears the burden of demonstrating error on appeal *by reference to the record of the proceedings below*." (Emphasis [sic].)

*Davis v. Wesolowski*, 2020-Ohio-677, 146 N.E.3d 633, ¶ 29 (8th Dist.), citing *Stancik v. Hersch*, 8th Dist. Cuyahoga No. 97501, 2012-Ohio-1955. App.R. 16(A)(7) provides that the appellant's brief shall include "[*a*]*n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions*, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary."

(Emphasis added.) *Bradley v. Bradley*, 8th Dist. Cuyahoga No. 109792, 2021-Ohio-2514, ¶ 23-24.

{¶ 27} In the instant matter, both of appellant's assignments of error are procedurally defective. Appellant fails to provide any cognizable argument in support of his two assigned errors. Appellant does not separately argue the sufficiency and manifest weight of the evidence assignments of error. Appellant fails to cite to the portions of the transcript of the magistrate's May 26, 2021 hearing upon which she relies, and fails to cite to supporting authorities.

{¶ 28} Appellant's brief contains an "introduction" section, a "statement of the facts" section, and a "conclusion" section. The "introduction" and "statement of the facts" sections outline the testimony that was presented at the magistrate's May 26, 2021 hearing. The "conclusion" section provides,

A Guardian is more than a landlord. A guardian is a teacher, a mentor, and an educator. A Guardian is a guide, a director, a helper, and a protector. A Guardian is a medical aide, a nurse's aide and a care giver. A Guardian is an accountant for paying bulls and guarding assets. A Guardian is a full time occupation for one Ward.

For the foregoing reasons as stated, and in the Exhibits attached hereto, [appellant] requests this Honorable Court to grant her custody and guardianship of her daughter as the best person for [the ward] to live with, learn and grow, independently, on her own.

Appellant's brief at 5.

{¶ 29} Although appellant alleges that the trial court erred in granting Benton's application and denying appellant's application, appellant fails to present any cognizable argument on appeal. Appellant does not address the sufficiency and manifest weight of the evidence concepts referenced in appellant's assignments of error, much less demonstrate how the trial court's judgment was not supported by sufficient evidence and against the manifest weight of the evidence. *See Taylor-Stephens v. Rite Aid of Ohio*, 8th Dist. Cuyahoga No. 106324, 2018-Ohio-4714, ¶ 120-121.

{¶ 30} Based on appellant's failure to comply with App.R. 12 and 16, this court may disregard and summarily overrule appellant's assignments of error. *See Bradley*, 8th Dist. Cuyahoga No. 109792, 2021-Ohio-2514, at ¶ 25; *Cleveland v. Taylor*, 8th Dist. Cuyahoga No. 109371, 2021-Ohio-584, ¶ 87; *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 55; *Wells Fargo Bank, N.A. v. Collins*, 8th Dist. Cuyahoga No. 109555, 2021-Ohio-508, ¶ 29; *State v. Thompson*, 2021-Ohio-376, 167 N.E.3d 1072, ¶ 91 (8th Dist.); *Wiltz v. Cleveland Clinic*, 8th Dist. Cuyahoga Nos. 109147 and 109483, 2021-Ohio-62, ¶ 18.

{¶ 31} Although appellant's brief fails to comply with App.R. 12 and 16(A)(7), this court will not summarily overrule appellant's defective assignments of error. Rather, in the interests of justice, this court will address appellant's sufficiency and manifest weight arguments. *See Fleming v. Shelton*, 8th Dist. Cuyahoga No.

108660, 2020-Ohio-1387, ¶ 10, citing *In re R.L.H.*, 8th Dist. Cuyahoga No. 100327, 2014-Ohio-3411, ¶ 9, fn. 3.

## B. Appointment of Guardian

{¶ 32} As noted above, appellant appears to argue that the trial court's judgment granting Benton's application was not supported by sufficient evidence, and the trial court's judgment denying appellant's application was against the manifest weight of the evidence.

{¶ 33} Appellant references the wrong standards of review. This court does not apply a manifest weight or sufficiency standard of review in reviewing a probate court's decision appointing a guardian over an incompetent person. Rather, this court reviews the probate court's decision for an abuse of discretion. *In re Guardianship of Gelsinger*, 8th Dist. Cuyahoga No. 108479, 2019-Ohio-4584, ¶ 16, citing *In re Estate of Collins*, 8th Dist. Cuyahoga No. 87978, 2007-Ohio-631, ¶ 10.

> "In making a determination as to who should serve as a guardian, the probate court's primary responsibility is to ensure that the person appointed will act in the best interests of the ward." *In re Guardianship of Hilt*, 6th Dist. Sandusky No. S-14-010, 2015-Ohio-3186, ¶ 20, quoting *In re Guardianship of Thomas*, 148 Ohio App.3d 11, 2002-Ohio-1037, 771 N.E.2d 882, ¶ 96 (10th Dist.). The probate court's determination regarding a guardianship is generally within the sound discretion of the trial court subject to reversal only for an abuse of discretion. *In re Guardianship of Muehrcke*, 8th Dist. Cuyahoga No. 81353, 2003-Ohio-176, ¶ 21.

*In re I.B.*, 8th Dist. Cuyahoga Nos. 102373 and 102853, 2015-Ohio-4181, ¶ 51. A trial court abuses its discretion when its judgment is unreasonable, arbitrary, or

unconscionable. *In re Guardianship of Gelsinger* at ¶ 16, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 34} In the instant matter, it is undisputed that the ward is, in fact, incompetent and in need of a guardian. After reviewing the record, we find no basis upon which to conclude that the trial court's determination that (1) Benton was suitable to serve as guardian of the person of the ward and (2) it was in the ward's best interest to appoint Benton as guardian of the person of the ward was unreasonable, arbitrary, or unconscionable. The evidence in the record supports the trial court's conclusion that granting Benton's application for guardianship was in the ward's best interest. *See In re I.B.* at ¶ 56.

{¶ 35} The ward has resided with Benton in Ohio her entire life. The ward is comfortable and familiar with the home and the family members with whom she interacts on a regular basis.

{¶ 36} Benton has consistently resided with the ward and has always been involved with her care. When LaShore was the ward's primary caregiver, Benton assisted LaShore in caring for the ward. When LaShore passed away, Benton took over as the ward's full and primary caregiver. Benton had been serving as the ward's primary caregiver for approximately eight months at the time of the magistrate's hearing.

{¶ 37} Appellant, on the other hand, has lived in Las Vegas, Nevada, for nearly 30 years. Appellant has never cared for the ward. Appellant's relationship with the ward has been limited to occasional visits and telephone communication.

As a result, appellant is much less familiar than Benton with the ward's daily routine and the care and attention that she requires. Furthermore, appellant intended to move the ward across the country into a new state, home, and environment with which the ward had no familiarity.

{¶ 38} The court investigator did not report any issues regarding Benton's relationship with the ward. Nor did the investigator identify any problems with the condition of the house in which the ward was residing with Benton.

{¶ 39} As noted above, the trial court concluded that the ward is familiar and comfortable with Benton, Benton understands the care that the ward needs, and the ward should remain in Benton's care. The trial court emphasized that "existing and continued patterns of family interactions and care are important in considering [the ward's] well-being." The record supports the trial court's findings.

{¶ 40} Benton consistently cared for and resided with the ward. The ward was familiar and comfortable with the house in which she resided with LaShore and Benton. Although Benton and appellant disputed the extent to which appellant has been involved in the ward's life, appellant's involvement has primarily been telephonic. There was absolutely no evidence presented that appellant cared for the ward on a regular basis, or that appellant understands the ward's needs and the care she requires. Assuming, arguendo, that appellant's home is appropriate for the ward, the ward is not familiar with the home. The trial court did not abuse its discretion in determining that it was not in the ward's best interest to uproot her life

and move across the country to live with appellant in an entirely new and unfamiliar setting.

{¶ 41} Based on the foregoing analysis, the evidence in the record supports the trial court's conclusion that awarding the guardianship to Benton was in the ward's best interests. *See In re I.B.*, 8th Dist. Cuyahoga Nos. 102373 and 102853, 2015-Ohio-4181, at ¶ 56. The record reflects that Benton was a committed caregiver to the ward. The trial court did not abuse its discretion in determining that it was in the ward's best interest to remain under Benton's care in the Ohio home, with which she was familiar and comfortable, and where she has resided her entire life. Finally, the magistrate's and trial court's decisions clearly demonstrate that the ward's best interest was the driving factor in granting Benton's application. *See In re I.B.* at ¶ 53, 55.

{¶ 42} For all of the foregoing reasons, we cannot conclude that the trial court's determination that Benton was the most appropriate applicant to be the ward's guardian was unreasonable, arbitrary, or unconscionable. Accordingly, the trial court did not abuse its discretion in granting Benton's application and denying appellant's application.

{¶ 43} Furthermore, by failing to comply with App.R. 12 and 16(A)(7) and failing to present a cognizable argument, appellant has failed to meet her burden of demonstrating error on appeal. It is not this court's duty to construct an argument on appellant's behalf.

{¶ 44} Appellant's assignments of error are overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR