[Cite as *State v. Redway*, 2020-Ohio-3826.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                     Court of Appeals No. WD-19-037

    Appellee                                   Trial Court No. 2018CR0207

v.

Rolando Redway                            **DECISION AND JUDGMENT**

    Appellant                                  Decided:  July 24, 2020

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

W. Alex Smith, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Rolando Redway, appeals from the April 30, 2019 judgment of

the Wood County Court of Common Pleas convicting him of possession of marijuana,

R.C. 2925.11(A) and 2925.11(C)(3)(e), a felony of the third degree, with a specification

for forfeiture of a cell phone in a drug case, R.C. 2941.1417(A), after acceptance of his

no contest plea as part of a negotiated plea agreement. The remaining count for drug trafficking was dismissed. The trial court sentenced appellant to community control. For the reasons which follow, we affirm.

{¶ 2} On appeal, appellant asserts the following single assignment of error:

The Trial Court Erred in Denying the Motion to Suppress.

{¶ 3} On appeal, appellant argues he entered his plea as a result of the denial of his motion to suppress, which he contends the trial court erroneously denied. He asserts only that the detention and seizure of appellant violated his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution because the detention exceeded a reasonable time period to complete the traffic stop.

{¶ 4} Appellate review of a trial court's ruling on a Crim.R. 12(C)(3) motion to suppress involves a mixed question of law and fact. *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, 126 N.E.3d 1132, ¶ 29 (Donnelly, J., concurring), quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 16. The appellate court conducts a de novo review of application of the law to the facts but defers to the trial court's evaluation of the credibility of witnesses and determination of the questions of fact which are supported by competent and credible evidence. *Hairston*, citing *Burnside*.

{¶ 5} Like a *Terry* stop, defined in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the scope and duration of the traffic stop must last no longer than is necessary to effectuate the purpose for which the stop was made. *Rodriguez v. United*

2.

*States*, 575 U.S. 348, 354, 135 S.Ct. 1609, 191 L.Ed.2d 492. A traffic stop requires a "reasonably diligent" check of the driver's license, criminal record, and automobile registration, and proof of insurance. *Id*. at 355, 357. However, an officer cannot make unrelated inquiries in order to "'measurably extend the duration of the stop,'" *id*. at 355, quoting *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781, 72 L.Ed.2d 694 (2009), or unduly delay the stop to conduct a dog sniff. *Rodriguez* at 357.

{¶ 6} In the case before us, the state highway patrol trooper testified that on April 18, 2018, near the exit ramp of the I-280 interchange, he observed, based on his past experience of observing drivers, several unusual behaviors as appellant passed by the trooper. The trooper began to follow appellant and observed more unusual behavior shortly before observing appellant move into the exit lane without signaling, a violation of R.C. 4511.39. The trooper then decided to initiate a traffic stop after the vehicle passed through the tollgate.

{¶ 7} The patrol car dash cam admitted into evidence recorded the stop. When the trooper activated the overhead lights on his vehicle, appellant activated his right turn signal and pulled off onto the right shoulder 10-to-15 seconds later. The trooper ran the plate before exiting his vehicle. He approached the vehicle at 17:40:54. He explained the reason for the stop and asked appellant for his license. The trooper found appellant to be almost too polite at times. He asked appellant about his destination and appellant responded that he was visiting a cousin in Detroit, Michigan, on Saturday. The explanation was suspicious to the trooper because it was Wednesday. The trooper

3.

inquired how appellant was able to take time off work and appellant indicated he drove for Uber and was his own boss. Appellant also indicated that he had made too much money driving for Uber the prior year and had paid $6,000 in taxes. That comment also seem suspicious to the trooper because he never heard anyone say they made too much money. The trooper testified he carried on the conversation to ensure the violation was not the result of impairment or fatigue. The trooper estimated this encounter took three minutes, ending at 17:43.07. The trooper returned to his vehicle to confirm the registration and license, and checked for outstanding warrants. Because of the unusual behaviors and comments, the trooper, at 17:44:08, requested a K-9 handler to respond to the stop. At 17:45:12, the trooper gave appellant's information to the dispatcher. Meanwhile, the border patrol agent working with the trooper checked the information through his data bases and received information that appellant was involved in an international drug smuggling ring out of the Philadelphia airport. The first K-9 handler was unable to respond, so the trooper contacted a second handler at 17:45:59. It took the K-9 officer six minutes to respond (17:52:12). The dispatch had not yet responded with the information needed to finalize the traffic stop and the trooper assumed it was because the criminal history check takes more time. After the K-9 handler arrived, he approached appellant's vehicle to speak with appellant at 17:52:44 and walked the dog around the car, following which the dog alerted to the vehicle. The handler was finished at 17:54:02. The trooper decided to search the vehicle and the search began at 17:58:17. At that point in time, the trooper had not yet received the information from dispatch he needed to issue

4.

a traffic ticket or a warning, so the mission of the traffic stop was not yet complete. Upon opening the trunk, the trooper found approximately fourteen pounds of marijuana.

{¶ 8} On appeal, appellant does not challenge the stop itself. He asserts only that the traffic stop was unconstitutional because it should have been completed in five minutes or less, but the trooper extended it to 13 minutes in order to allow time for a K-9 unit to arrive. We find this argument unfounded. Clear and convincing evidence in the record supports the trial court's finding that the trooper acted in a diligent manner in processing the traffic stop. Although the trooper called in a canine unit, he continued to process the traffic ticket in his normal manner and any delay was due to the processing of the request by the dispatch. Therefore, we find the traffic stop and seizure of appellant did not violate the Fourth and Fourteenth Amendment to the United States Constitution. We find appellant's sole assignment of error is not well-taken.

{¶ 9} Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

5.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.