[Cite as *Wiltz v. Cleveland Clinic*, 2021-Ohio-62.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

CASSANDRA WILTZ,                                  :

    Plaintiff-Appellant,               :

                                          Nos. 109147 and 109483

    v.                                           :

THE CLEVELAND CLINIC, ET AL.,      :

    Defendants-Appellees.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 14, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-912910

---

### *Appearances:*

Cassandra Wiltz, *pro se.*

Reminger Co., L.P.A. and William A. Meadows, *for appellees* The Cleveland Clinic, The Cleveland Clinic Foundation, Dr. Chung-Jyi Tsai, Dr. Monica Ray, and Joan Kmiecik.

Polling Law and Patrick F. Smith, *for appellees* Dr. David Sabol, Dr. Brett Sklaw, Dr. Prachi Biyani, Dr. Brian Isler, and Ohio Gastroenterology Group, Inc.

Bricker & Eckler, L.L.P., Karen L. Clouse and Bobbie S. Sprader, *for appellees* OhioHealth, OhioHealth Primary Care Physicians, Dr. Jennifer Thomas, Doctors Hospital,

Dr. Matthew Scott Sisson, Heather Price, RN, Jennifer L.S. Smith, CNP, OhioHealth Riverside Methodist Hospital, and Dr. James Cummins.

PATRICIA A. BLACKMON, J.:

**{¶ 1}** Cassandra Wiltz ("Wiltz"), pro se, appeals from various journal entries in favor of 20 defendants in this medical malpractice case. Wiltz assigns six errors for our review.[1] Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.

## Facts and Procedural History

**{¶ 2}** In this case, Wiltz claims that numerous health care providers "failed and refused to diagnose and treat [her] Cancer and Paraneoplastic Syndrome, delayed the diagnosis of Cancer and Paraneoplastic Syndrome, and Misdiagnosed Cancer and Paraneoplastic Syndrome."

**{¶ 3}** For ease of discussion, the defendants in the case at hand will be referred to as follows:

"OhioHealth" — OhioHealth, OhioHealth Primary Care Physicians, Jennifer Thomas, M.D., Doctors Hospital, Matthew Scott Sisson, M.D., Heather Price, R.N., Jennifer L.S. Smith, C.N.P., OhioHealth Riverside Methodist Hospital, and James Cummins, M.D.

"Ohio Gastro" — Ohio Gastroenterology Group, Inc., David Sabol, M.D., Brett Sklaw, M.D., Prachi Biyani, M.D., and Brian Isler, M.D.

"Ott" — Julie Ann Ott, D.O.

---

[1] *See* appendix.

"Cleveland Clinic" — Cleveland Clinic, Cleveland Clinic Foundation, Chung-Jyi Tsai, M.D., Monica Ray, M.D., and Joann Kmiecik, Speech-Language Pathologist.

{¶ 4} The following allegations are taken directly from Wiltz's complaint and provide a general timeline of events.

{¶ 5} In September 2016, Wiltz developed gastrointestinal ("GI") issues, specifically "difficulty swallowing/eating," and sought medical treatment from various health care providers. Wiltz first saw doctors at The Ohio State University Wexner Medical Center,[2] who allegedly "determined that she had no medical problem, and * * * determined that she had a psychological problem." In January 2017, a doctor at OhioHealth became Wiltz's primary care physician and agreed with the previous diagnosis that she "had no medical problems," but she "had a psychological problem that [she] was allegedly 'in denial about.'" Also in January 2017, Wiltz was seen by the medical staff at Doctors Hospital, who committed her to the psychiatric unit at Riverside Hospital for ten days.

{¶ 6} Additionally in January 2017, Wiltz sought treatment for her GI issues with physicians at Ohio Gastroenterology Group, Inc., who advised her that "her diagnosis was that [she] did not have medical problems and only had a psychological problem." However, in February and March 2017, Ohio Gastro performed tests on Wiltz and told her that she "had several medical problems that included (but were not limited to) a motility problem and likely esophageal disorder

---

[2] The Ohio State University Wexner Medical Center and its affiliated health care providers are not parties to this case.

and that [she] needed to have another Manometry performed."  Ohio Gastro also informed Wiltz that she had acid reflux.

{¶ 7}  In April 2017, Wiltz saw a doctor at the Cleveland Clinic who performed a Manometry and told her that "all tests revealed that she did not have any medical problems and that all test results 'showed that everything was normal' and 'were consistent with what OSU staff had stated.'"

{¶ 8}  In May 2017, Wiltz went to another doctor at Ohio Gastro who performed more tests that "indicated that [Wiltz] had a severe gastric problem, a massive and markedly abnormal distended stomach, a kidney problem, a liver problem, delayed stomach emptying, and other problems related to her gastrointestinal system."  However, yet another doctor at Ohio Gastro told Wiltz in July 2017 that she "did not have a gastric enlargement, distended stomach, or any other medical problem."

{¶ 9}  In August 2017, Wiltz saw another doctor at the Cleveland Clinic who told her "that her symptoms and test results suggested that she might have Paraneoplastic Syndrome and Cancer."  On September 21, 2017, Wiltz saw another doctor at the Cleveland Clinic who told her that "her esophagus had been damaged and had stopped functioning * * *, that the damage was irreversible, * * * that she needed a feeding tube, and scheduled surgery."

{¶ 10} On September 25, 2017, Wiltz "was diagnosed with Stage II Breast Cancer that had spread to the lymph nodes and learned that the symptoms that she had for one year were caused by Cancer and Paraneoplastic Syndrome (and were not

caused by Acid Reflux * * * or any * * * type of psychological problem).ˮ  In December 2017, Wiltz had a mastectomy, but her "pre-surgery symptoms did not disappear."  Additionally, Wiltz learned in May 2018 that she "had permanent bone loss/damage that the actions of the defendants had caused."  Wiltz also claims that she suffered "extreme pain and discomfort, the inability to eat and drink (and related symptoms of malnutrition), extreme anxiety, extreme emotional distress, humiliation, * * * and the inability to work and to participate in activities necessary to obtain work."

{¶ 11}  On September 24, 2018, and September 25, 2018, Wiltz "provided the defendants with 180-day Notices of Intent to Sue."  On March 22, 2019, Wiltz filed this lawsuit against the 20 named defendants and two "John Doe" defendants.  Wiltz's complaint lists five claims:  negligence; gross negligence; medical malpractice; fraud; and Health Insurance Portability and Accountability Act ("HIPAA") violations.

{¶ 12}  On May 16, 2019, the trial court granted the Cleveland Clinic's motion to dismiss.  This dismissal was without prejudice and was based on Wiltz's failure to file an affidavit of merit required by Civ.R. 10(D)(2)(a).  On December 13, 2019, Wiltz filed a Civ.R. 60(B) motion for relief from judgment concerning this dismissal, which the trial court denied on January 15, 2020.

{¶ 13}  On June 13, 2019, the trial court granted Ohio Gastro's motion to dismiss based on claims 1 through 4 of the complaint being barred by the statute of limitations and claim 5 being preempted by HIPAA.

{¶ 14} On July 5, 2019, the court granted OhioHealth's motion to dismiss based on claims one through four of the complaint being barred by the statute of limitations and claim 5 being preempted by HIPAA.

{¶ 15} On September 26, 2019, the court granted Ott's motion for judgment on the pleadings for failure to file to an affidavit of merit required by Civ.R. 10(D)(2)(a).

{¶ 16} It is from these orders, as well as other interlocutory orders, that Wiltz appeals.

## Analysis

{¶ 17} The Ohio Supreme Court has repeatedly declared that "pro se litigants * * * must follow the same procedures as litigants represented by counsel." *State ex rel. Gessner v. Gore*, 123 Ohio St.3d 96, 2009-Ohio-4150, 914 N.E.2d 376, ¶ 5. Additionally, "[i]t is well-established that pro se litigants are presumed to have knowledge of the law and legal procedures, and that they are held to the same standard as litigants who are represented by counsel." *Sabouri v. Ohio Dept. of Job & Family Servs.*, 145 Ohio App.3d 651, 654, 763 N.E.2d 1238 (10th Dist.2001).

{¶ 18} Pursuant to App.R. 16(A)(7), an appellant's brief shall include "citations to the authorities, statutes, and parts of the record on which appellant relies." Pursuant to App.R. 12(A)(2), "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." In the instant case, Wiltz

fails to cite any law under her first and third assigned errors, and she fails to include legal analysis throughout most of her brief, instead relying on allegations and conclusory statements.

{¶ 19} However, appellate courts generally prefer to review cases on their merits.  Therefore, we ordinarily afford lenience to pro se litigants.  *But see State ex rel. Neil v. French*, 153 Ohio St.3d 271, 2018-Ohio-2692, 104 N.E.3d 764, ¶ 11 ("that leeway manifests in limited ways:  attempting to address a pro se litigant's arguments on the merits when they are indecipherable * * * or liberally construing the allegations in a pro se [litigant's] complaint as stating the elements of a claim").

### First Assigned Error

{¶ 20} Wiltz argues that the trial court erred by dismissing the OhioHealth defendants on July 5, 2019; docketing her motion for leave to amend the complaint on July 2, 2019, rather than June 29, 2019; and denying her motion to reconsider the denial of her motion for leave to amend the complaint  on August 14, 2019.

{¶ 21} Although somewhat hard to decipher from her appellate brief, we glean from the record that Wiltz mailed her pleadings and motions to the Cuyahoga County Clerk of Courts.  Law dating back well over a century confirms that a document is "filed" when it is delivered to and received by the clerk's office, not when it is sent. *King v. Penn,* 43 Ohio St. 57, 61, 1 N.E. 84 (1885).  Wiltz's motion for leave to amend the complaint is docketed and time-stamped by the clerk's office on July 2, 2019.  There is no evidence in the record to support her claim that it should have been docketed on June 29, 2019.

{¶ 22} The remaining arguments under this first assigned error are duplicative of arguments detailed in our analysis of the second and third assigned errors.

**Second Assigned Error**

{¶ 23} Wiltz argues that the trial court erred by finding, in its denial of her motion for reconsideration of the motion for leave to amend the complaint, that her "proposed amendments related only to her claims against the Cleveland Clinic Defendants [who] were dismissed on 05/16/2019."

{¶ 24} On July 10, 2019, the trial court denied Wiltz's motion for leave to amend her complaint, concluding that "plaintiff cannot amend her claims against defendants that are already dismissed." On August 24, 2019, the trial court further clarified its previous order when it denied Wiltz's motion for reconsideration. Specifically, the court found that Wiltz highlighted her proposed amendments to the 141-paragraph complaint in paragraphs 73, 74, 78, 79, 80, and 83. The court further found that these proposed amendments "related only to her claims against the Cleveland Clinic defendants [who] were dismissed on 05/16/2019."

{¶ 25} Pursuant to Civ.R. 15(A), a party may amend its pleadings later than 28 days after the pleadings were served "only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires." This court has held that the "granting of leave to amend a pleading is within the sound discretion of the trial court. Although leave to amend should be liberally granted, the party seeking such must still provide some good-faith basis for

the amendment." (Citations omitted.) *Bank of N.Y. Mellon v. Magby*, 8th Dist. Cuyahoga No. 107853, 2019-Ohio-3042, 140 N.E.3d 1098, ¶ 5.

{¶ 26} Although somewhat unclear from her appellate brief, it appears that Wiltz's argument that she should have been permitted to amend her complaint is as follows: "Should the plaintiff [have] been allowed to amend her Complaint, so that it would indicate why she did not 'know' or 'have reason to know' that she had Cancer 'until 9/25/17?'" Wiltz further argues that "After the Court made the 6/13/19 dismissal, [she] realized that her Complaint needed to be amended, because the Court had clearly misunderstood its contents and the contents were not clear enough 'to show that the 9/2018 Notices of Intent to Sue and 3/22/19 Complaint had been timely provided/filed.'"

{¶ 27} Wiltz essentially argues that her proposed amended complaint would survive the statute of limitations for medical malpractice claims. All of Wiltz's proposed amendments fall under the first claim of her complaint, which is captioned "Negligence." R.C. 2305.113(E)(3) defines a medical malpractice claim as "any claim that is asserted in any civil action against [a healthcare provider] and that arises out of the medical diagnosis, care, or treatment of any person." As stated throughout this opinion, the gist of Wiltz's complaint, including the first claim, is that the defendants failed to diagnose and treat her cancer and paraneoplastic syndrome. Failure to diagnose is actionable as a medical malpractice claim. *See generally Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976). We note that all of the defendants in the instant case are considered healthcare providers under R.C.

2305.113(E)(3). Therefore, Wiltz's "negligence" claim is a medical malpractice claim.

{¶ 28} Furthermore, whether the court abused its discretion by denying Wiltz's requests to amend her complaint is conditional on whether her proposed amended complaint would survive the statute of limitations for medical malpractice claims, which would be a good-faith basis for amending a complaint. This will be discussed further in our analysis of Wiltz's third assigned error.

**Third Assigned Error**

{¶ 29} Wiltz argues that the trial court erred by dismissing her medical malpractice claims based on the statute of limitations. We have already determined that Wiltz's first claim is a medical malpractice claim. Her second claim is styled as a "Gross Negligence" claim, and this too is a medical malpractice claim. The third claim is styled as "Medical Malpractice." The fourth claim is entitled "Fraud and Misrepresentation," and in it Wiltz essentially alleges that the defendants misdiagnosed her as having acid reflux. This claim for misdiagnosis is akin to a failure-to-diagnose claim, and is properly seen as a medical malpractice claim.

{¶ 30} Therefore, the first four claims in Wiltz's complaint are subject to the one-year statute of limitations for medical malpractice claims. "[A]n action upon a medical * * * claim shall be commenced within one year after the cause of action accrued." R.C. 2305.113(A). This statute of limitations may be extended by 180 days by giving written notice to a defendant of the intent to sue. R.C. 2305.113(B)(1). It appears to be undisputed that Wiltz provided 180-day notices to the defendants on

September 24, 2018, and September 25, 2018. For the purpose of this appeal, and construing this in favor of Wiltz, we assume that the defendants received this notice on the earlier of the two days, September 24, 2018. *See Edens v. Barberton Area Family Practice Center*, 43 Ohio St.3d 176, 180, 539 N.E.2d 1124 (1989) ("under [former] R.C. 2305.11(B), the one-hundred-eighty-day period commences to run from the date the notice is received and not the date it is mailed").

{¶ 31} The Ohio Supreme Court has held that "a cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury." *Oliver v. Kaiser Community Health Fund*, 5 Ohio St.3d 111, 117-118, 449 N.E.2d 438 (1983). In determining the accrual date, the trial court should look to the following:

> when the injured party became aware, or should have become aware, of the extent and seriousness of his condition * * *; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition.

*Hershberger v. Akron City Hospital*, 34 Ohio St.3d 1, 6, 516 N.E.2d 204 (1987).

{¶ 32} The Ohio Supreme Court expanded this analysis in *Allenius v. Thomas,* 42 Ohio St.3d 131, 133, 538 N.E.2d 93 (1989), holding that the key is

> an occurrence of a "cognizable event" which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies.

{¶ 33} In the case at hand, the trial court found that Wiltz "alleges that she was informed in August 2017 of a potential cancer diagnosis. Therefore, [she] had until August 31, 2018" to file a complaint or provide notice of intent to sue. This finding is supported in the record by paragraph 73 of Wiltz's complaint, which states in pertinent part as follows: "The Cleveland Clinic GI doctor that [Wiltz] was eventually assigned to (in 8/2017 * * *) told [her] that her symptoms and test results suggested that she might have Paraneoplastic Syndrome and Cancer." In the very next paragraph of her complaint, paragraph 74, Wiltz alleges that she asked another defendant-doctor, in August 2017, "to arrange for her to have cancer tests," this doctor "refused to do so," and she "obtained a new primary care doctor, who made the arrangements for her cancer tests."

{¶ 34} Upon review, we find that these are cognizable events, because they put Wiltz on actual notice that she may have paraneoplastic syndrome and cancer. In fact, in response to being told that she may have cancer, Wiltz requested "cancer tests." Wiltz failed to identify what day or days in August 2017 these events occurred. However, the trial court appears to have construed the evidence in a light most favorable to Wiltz and determined that the statute of limitations began to run on August 31, 2017. We find no error with this conclusion. Wiltz had until August 31, 2018, to preserve her medical malpractice claims. However, the evidence in the record, as well as Wiltz's own admissions, show that she provided the 180-day letters on September 24, 2018, and filed her complaint on March 22, 2019. Neither of these actions occurred within the statute of limitations.

{¶ 35} We now turn to whether Wiltz's proposed amendments to her complaint would have altered the cognizable event date of August 2017. The proposed amendments in paragraphs 73 and 74 are as follows:

> [The Cleveland Clinic GI doctor who told Wiltz that she may have paraneoplastic syndrome and cancer also told her] that he did not believe that [she] likely had Paraneoplastic Syndrome and Cancer (because he believed that she, instead, had Conversion Disorder/psychological problem). That he would neither arrange for [her] to have a Cancer test at the Cleveland Clinic nor provide [her] with a referral so that she could get a Cancer test elsewhere (because he considered her chances of having Cancer to be too "remote"), and that (if [she] wanted a Cancer test) she should make her own arrangements to get it.

> Based upon what [Wiltz] was told by the staff of the Cleveland Clinic in 8/2017, [she] did not 'believe/know' or 'have reason to believe/know' that she had (or might have) Cancer and Paraneoplastic Syndrome. [She] also encountered difficulty getting a Cancer test.

{¶ 36} Upon review, we find that the bulk of the proposed amendments are nothing more that reiterations of allegations already found in Wiltz's original complaint. The only "new" information is that the doctor who told her she "might" have paraneoplastic syndrome and cancer also told her that he did not believe this was "likely." We cannot say that this added allegation negates the cognizable event of being notified that one's test results and symptoms suggested one might have cancer and paraneoplastic syndrome. The likelihood of a correct diagnosis does not water down one's knowledge that the diagnosis has been suggested.

{¶ 37} Therefore, we find no error with the trial court's dismissal of claims 1, 2, 3, and 4 against the OhioHealth and Ohio Gastro defendants based on the claims

being barred by the statute of limitations. Accordingly, Wiltz's first, second, and third assigned errors are overruled.

**Fourth Assigned Error**

{¶ 38} Under her fourth assigned error, Wiltz first argues that the trial court erred by dismissing the Cleveland Clinic defendants, because she was never served with the motion to dismiss. Second, Wiltz argues that the trial court erred by denying her May 14, 2019 motion for an "order indicating that Cleveland Clinic Defendants' Response/Opposition to Plaintiff's 3/22/19 Motion [to extend time for filing an affidavit of merit] will not be heard by the Court." Third, Wiltz argues that the court erred "when it made an order related to [her] Civ.R. 60(B) Motion."

{¶ 39} The certificate of service attached to Cleveland Clinic's motion to dismiss states as follows: "I hereby certify that on April 10, 2019 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system and/or U.S. Mail to all parties. Parties can also access this document through the Court's system."

{¶ 40} Pursuant to Civ.R. 5(B)(2)(c), "a document is served under this rule by * * * mailing it to the person's last known address by United States mail, in which event service is complete upon mailing * * *." This court has held that "where a party follows the Ohio Civil Rules governing service of process, there is a presumption that service is proper unless the other party rebuts this presumption with sufficient evidence of nonservice." *Mitchell v. Babickas*, 8th Dist. Cuyahoga No. 105294, 2018-Ohio-383, ¶ 10. The Cleveland Clinic has maintained throughout these

proceedings that it mailed the motion to dismiss to Wiltz's last known address where she had been receiving other filings associated with this case.

{¶ 41} In its denial of Wiltz's December 13, 2019 motion for relief from judgment, the trial court found that Wiltz did not rebut the presumption of proper service with "'evidentiary-quality information' that she did not receive service of the motion. She merely asserts that she did not receive the motion."

{¶ 42} Accordingly, we find the following: The Cleveland Clinic followed Civ.R. 5(B)(2)(c); there is a presumption that service was proper; Wiltz did not properly rebut this presumption; and the court did not err by dismissing Wiltz's complaint for lack of service of the motion to dismiss.

{¶ 43} We turn to Wiltz's motion for relief from judgment. Civ.R. 60(B) states in pertinent part as follows: "the court may relieve a party * * * from a final judgment * * * for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect * * *." To succeed on a Civ.R. 60(B) motion, a party must demonstrate that: 1) they have a meritorious defense; 2) they are entitled to relief under the rule; and 3) the motion is made within a reasonable time. *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976).

{¶ 44} In Wiltz's Civ.R. 60(B) motion, she argues that the Cleveland Clinic "did not ever serve" its motion to dismiss to her. She further argues that the certificate of service does not show that the Cleveland Clinic mailed the motion to her because her "name and address are not even mentioned anywhere in the certification." However, as stated earlier, the certificate of service does, in fact, state

that the motion "will be sent by operation of the Court's electronic filing system and/or U.S. Mail to all parties."

{¶ 45} Upon review, we find that Wiltz does not have a meritorious defense to present regarding why her claims against the Cleveland Clinic should not have been dismissed. The dismissal was granted for failure to file an affidavit of merit required by Civ.R. 10(D). To date, Wiltz has not produced an affidavit of merit regarding any of her claims against any of the defendants. In fact, in her motion for relief from judgment, she states that "I (however) have no further recourse against the defendants, given that I cannot get an Affidavit of Merit (by 6/16/20 or at any other time)." *See Fletcher v. University Hospitals of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶ 13 ("Because the heightened standard imposed by the explicit text of Civ.R. 10(D)(2)(c), now (d), goes directly to the sufficiency of the complaint, a motion to dismiss for failure to state a claim upon which relief can be granted is the proper remedy when the plaintiff fails to include an affidavit of merit").

{¶ 46} Wiltz further argues that the defendants have refused to provide her "medical file"; however, this is simply inaccurate, at least in part, because she has attached numerous pages of her medical records to her voluminous filings. Furthermore, in its motion to dismiss, the Cleveland Clinic maintains that it sent Wiltz her medical records on October 20, 2017, and Wiltz acknowledged that she received her "complete medical file from the Cleveland Clinic (in 2017)," other than

"documents that [she] provided to the defendants, beginning around 4/2017, in which she advised the defendants of what her medical symptoms were."

{¶ 47} We further find that, because Wiltz failed to rebut the presumption of proper service of the motion to dismiss, she cannot demonstrate excusable neglect. Wiltz failed to satisfy the first and second prongs of the *GTE* test. This court has held that the *GTE* "requirements are independent and written in the conjunctive; therefore, all three must be clearly established in order [for the movant] to be entitled to relief." *Aurora Bank, F.S.B. v. Gordon*, 8th Dist. Cuyahoga No. 103074, 2016-Ohio-935, ¶ 10. Therefore, the court did not abuse its discretion by denying Wiltz's Civ.R. 60(B) motion for relief from judgment. Wiltz's fourth assigned error is overruled.

### Fifth Assigned Error

{¶ 48} Wiltz next argues that the trial court erred by denying her motion for relief from judgment based on fraud. As pertinent to this assigned error, Civ.R. 60(B) states that "the court may relieve a party * * * from a final judgment * * * for the following reasons: * * * (3) fraud * * *, misrepresentation or other misconduct of an adverse party * * *."

{¶ 49} A review of Wiltz's appellate brief shows that she bases this assigned error on "fraud" by the court in its May 16, 2019 journal entry dismissing the Cleveland Clinic and its January 15, 2020 journal entry denying her motion for relief from judgment. Although unclear from her brief, we surmise that Wiltz argues that the trial court misconstrued various allegations in her complaint. Wiltz does not cite

to any case law in Ohio, or elsewhere, that deems a court's findings of fact "fraudulent" when the asserting party merely disagrees with them. We cannot say that this is the type of "fraud" Civ.R. 60(B)(3) was designed to discourage. By its plain terms, Civ.R. 60(B)(3) "provides relief from a judgment based upon fraud, misrepresentation, or misconduct [by an adverse party] relative to [that] party's obtaining the judgment." *Teneric L.L.C. v. Zilko*, 8th Dist. Cuyahoga No. 91410, 2009-Ohio-1363, ¶ 15. Accordingly, Wiltz's fifth assigned error is overruled.

## Sixth Assigned Error

{¶ 50} Wiltz's final argument on appeal is that the trial court discriminated against her because she is acting pro se by not allowing her to file documents "when she wanted to file them and have them docketed." It is under this assigned error that Wiltz cites the only case in her brief to support her arguments on appeal: *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). In *Boddie*, the United States Supreme Court held the following:

> [W]e conclude that the State's refusal to admit [indigent] appellants to its courts, the sole means in Connecticut for obtaining a divorce, must be regarded as the equivalent of denying them an opportunity to be heard upon their claimed right to a dissolution of their marriages, and, in the absence of a sufficient countervailing justification for the State's action, a denial of due process.

*Id.* at 380.

{¶ 51} The Ohio Supreme Court has held that "Due process of law involves only the essential rights of notice and hearing, or opportunity to be heard before a competent tribunal." *Luff v. State*, 117 Ohio St. 102, 113, 157 N.E. 388 (1927).

{¶ 52} Wiltz's appellate brief states that "[a]lthough [she] actually mailed all of her documents to the Court in 'a timely manner,' the Office of the Clerk refused to timely accept (from the postal service) any of the documents that were sent to the Court by [her]." First, we note that, according to the lengthy trial court docket in this case, Wiltz filed no less than 23 motions, briefs, or responses, all of which were time-stamped and docketed by the clerk's office. Contrary to Wiltz's assertion, it is her responsibility to file what she wants to file in a timely manner, not the clerk's office's responsibility.

> [T]he filing of a document does not depend on the performance of a clerk's duties. A document is "filed" when it is deposited properly for filing with the clerk of courts. The clerk's duty to certify the act of filing arises only after a document has been filed. * * * Thus, a party "files" by depositing a document with the clerk of court, and then the clerk's duty is to certify the act of filing. In short, the time or date stamp does not cause the filing; the filing causes the certification.

*Zanesville v. Rouse*, 126 Ohio St.3d 1, 2010-Ohio-2218, 929 N.E.2d 1044, ¶ 7. *See also Pope v. Graham*, 8th Dist. Cuyahoga No. 37989, 1978 Ohio App. LEXIS 8463 (Dec. 14, 1978) ("Appellant incorrectly asserts that the Ohio Rule of Appellate Procedure 13(A) provides that mailing constitutes 'filing' of a complaint. The rule expressly states that filing is not complete until the papers are in the clerk's hands within the statutory time period * * *").

{¶ 53} Wiltz presented nothing other than self-serving assertions to support the argument that the court discriminated against her or that her due process rights were violated. We are unable to give these unsubstantiated claims serious consideration without independent, credible, or meaningful evidence to support

them.  This court has held the following: "it is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error.  * * * 'An appellate court is not a performing bear, required to dance to each and every tune played on an appeal.'"  (Citations omitted.)  *Rodriguez v. Rodriguez,* 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456, ¶ 7, quoting *State v. Watson*, 126 Ohio App.3d, 316, 710 N.E.2d 340 (12th Dist.1998).

{¶ 54} Upon review, we find no error with the court relating to how and when Wiltz filed her documents.  Accordingly, Wiltz's sixth and final assigned error is overruled.

{¶ 55} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
PATRICIA A. BLACKMON, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR

**APPENDIX**

Assignments of Error No. 1 The Court erred and violated Civ.R. 15(A), abused its discretion, and behaved in an arbitrary, capricious and unreasonable manner, when it docketed the plaintiffs 6/29/19 Motion for Leave to Amend her Complaint on 7/2/19, dismissed the Complaint against eleven of the defendants on 7/5/19, made a 7/10/19 order/judgment that denied the plaintiffs Motion for Leave to Amend her Complaint "solely on the basis of a claim that it was too late to amend the Complaint, because the Complaint had already been dismissed by the Court," and made an 8/14/19 order that failed and refused to reverse its 7/10/19 order "after the plaintiff filed a Motion for Reconsideration of the 7/10/19 order/judgment that correctly pointed out that the Complaint had not been dismissed against twelve defendants, when the Motion for Leave to Amend the Complaint was docketed by the Court, and still (as of the date of the plaintiffs Motion for Reconsideration) had not been dismissed against one of the defendants".

Assignments of Error No. 2 The Court erred (and violated Civ.R. 15(A)), made a decision that is not 'in the interest of justice', made a decision that is not supported by the evidence that is in the Record, made a decision that is arbitrary, capricious, and unreasonable, and abused its discretion, when it refused to grant the plaintiff leave to amend her Complaint and when it made an order (denying the plaintiffs Motion for Reconsideration of the order that denied the Motion for Leave to Amend the Complaint) which stated that the Motion for Leave to Amend was denied 'because the proposed amendments were not relevant to the Complaint's charges against 17 of the defendants'.

Assignments of Error No. 3 The Court erred and abused its discretion, when it made 6/13/19, 7/5/19, and 9/26/19 orders that dismissed the entire 3/22/19 Complaint against the Ohio Health and the Ohio Gastro defendants, that explained why two of the 3/22/19 Complaint's medical claims against the defendants were dismissed (ie: because the statute of limitations period for filing claims about Failure to Diagnose/Treat Cancer and Delayed Diagnosis of Cancer had allegedly expired, when the Complaint was filed), and that would not provide reasons for the dismissals of the Complaint's many other medical claims and non-medical claims or acknowledge that the statute of limitations filing periods for the many other claims had not expired 'when Notices of Intent to Sue were provided to defendants' or 'when the Complaint was filed'.

Assignments of Error No. 4 The Court erred (and violated Civ.R.5(B)(4)), denied the plaintiff her due process right to participate in the proceedings and to be heard, abused its discretion, made arbitrary, capricious, and unreasonable decisions, and made a decision that is not consistent with the evidence that is in the Record, when

it heard the Cleveland Clinic defendants' Motion to Dismiss that was not ever served to the plaintiff (and that was filed along with a Certificate of Service that clearly indicated that the Motion WAS NOT served to the plaintiff), when it ignored the plaintiffs written motion-request that the Court not hear the Motion to Dismiss that was not served to her, when it dismissed the Complaint against the Cleveland Clinic defendants on the basis of the Motion to Dismiss that the plaintiff could not oppose (solely because she was not served with the motion and did not know its contents), and when it made an order related to the plaintiffs Civ.R.60(B) Motion (which requested a reversal of the dismissal, because of the violations of Civ.R.5) that incorrectly stated that the Certificate of Service that was filed with the Motion to Dismiss and that is in the Record indicates that the motion WAS served to the plaintiff.

Assignments of Error No. 5 The Court erred, abused its discretion, and made a decision that was arbitrary, capricious, and unreasonable, when it made a 1/15/20 order that denied the plaintiffs Civ.R,60(B) motion (which requested a reversal of the 5/16/19 order that dismissed the case against the Cleveland Clinic defendants) and that failed to acknowledge or address the motion's arguments that the 5/16/19 order contained errors and that the 5/16/19 order was made on the basis of fraud.

Assignments of Error No. 6 The Court engaged in behavior that discriminated against the plaintiff (because she is a pro se party), when it used "mail accepting procedures" and "an agreement with the postal service" to insure that the plaintiff could not file documents (and could not have documents docketed) "when she wanted to file them and to have them docketed" and it refused to stop the practices "when the plaintiff made a request that they be stopped."