[Cite as *Francis v. Cleveland Clinic Found.*, 2026-Ohio-829.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ANTOINE FRANCIS, INDIVIDUALLY :
AND AS ADMINISTRATOR OF THE
ESTATE OF MICHAEL E. FRANCIS, :

    Plaintiff-Appellant, :

                                        No. 115062

    v. :

CLEVELAND CLINIC FOUNDATION, :
ET AL.,

    Defendants-Appellees. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 12, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-993096

---

### *Appearances:*

D.W. Smith Legal Services and Derek W. Smith, *for appellant*.

Roetzel & Andress, LPA and Emily K. Anglewicz, *for appellee* Cleveland Clinic Foundation.

LISA B. FORBES, P.J.:

{¶ 1} Antoine Francis, individually ("Antoine") and as administrator of Michael Francis's Estate ("the Estate") (collectively, "Appellant"), appeals the trial

court's orders granting Cleveland Clinic Foundation's ("CCF") motion for partial summary judgment and motion in limine. After a thorough review of the facts and the law, we affirm.

## I.    Facts and Procedural History

{¶ 2}    The parties do not dispute the following facts. On December 3, 2020, Michael E. Francis ("Michael") underwent hip surgery in a CCF hospital. Before surgery, Michael presented with several conditions that elevated the risk of adverse surgical outcomes, including that he was receiving hemodialysis for kidney disease. On December 4, 2020, after his hip surgery, while in recovery in the hospital, Michael went into cardiac arrest and died. For a period before Michael's death, heart monitors that Michael's physician had ordered for him were not properly connected.

{¶ 3}    On April 22, 2022, Appellant sued CCF in the Cuyahoga County Common Pleas Court, before later voluntarily dismissing his complaint. He refiled his complaint on February 20, 2024, raising the following claims: Count 1, "Medical Negligence, Professional Torts and/or General Negligence/Survivorship" and Count 2, "Wrongful Death." Appellant also requested compensatory and punitive damages. He alleged that, because CCF's monitors had not been properly connected, medical personnel had failed to respond timely to Michael's cardiac arrest.

{¶ 4}    On December 2, 2024, CCF filed a motion for partial summary judgment, arguing that Appellant commenced the medical-negligence survivorship claim in this case outside the one-year limitations period that R.C. 2305.113(A)

imposes on medical claims. CCF attached to its motion a copy of an email from Appellant's counsel to CCF, dated March 27, 2021, in which Appellant's counsel represented that he was investigating potential medical claims arising from Michael's death. The parties do not dispute that this email was the first attempt that counsel made to inform CCF that he was investigating these potential claims. The parties also do not dispute that the one-year limitations period in R.C. 2305.113(A) applies to the medical-negligence survivorship claim pled in Count One.

{¶ 5} Appellant opposed CCF's motion, arguing that counsel's email and a CCF email in response were sufficient to extend the limitations period by an additional 180 days under R.C. 2305.113(B), within which time Appellant had filed his initial complaint. Appellant attached to his summary-judgment briefing a copy of an email, dated March 28, 2021, that CCF sent to Appellant's counsel. In this email, CCF confirmed that it had received counsel's correspondence regarding his investigation into potential claims.

{¶ 6} On March 19, 2025, the court granted CCF's motion for partial summary judgment. Consequently, the Estate's medical-negligence survivorship claim was dismissed.[1] The case proceeded on Antoine's wrongful-death claim.

{¶ 7} Before trial, Antoine proposed jury instructions, including one regarding a loss-of-chance theory. That is, the proposed jury instruction addressed

---

[1] The related request for punitive damages was also dismissed. *See Rubeck v. Huffman*, 54 Ohio St.2d 20, 22 (1978) (Punitive damages are not available in a wrongful-death action.).

whether CCF's failure to maintain working monitors deprived Michael of a less-than-even chance to recover from his cardiac arrest.

{¶ 8} On March 24, 2025, CCF filed a "motion in limine to preclude plaintiff from pursuing a loss-of-chance theory at trial," arguing that Antoine's medical expert Dr. David Grundy ("Dr. Grundy") had offered no opinion in his expert report or deposition regarding loss of chance. Following in-court arguments by counsel for each party, the court granted CCF's motion in limine. On the record, the court instructed the parties to limit the testimony of experts "to the opinions that are contained within their expert reports." The court found that "the loss of less than even chance of recovery claim . . . [was] not cited to explicitly in the expert witness report" of Dr. Grundy.

{¶ 9} The case proceeded to a jury trial on March 24, 2025. The court did not issue the proposed jury instruction regarding loss of chance. CCF stipulated that it had failed to satisfy a duty to Michael to maintain cardiac monitoring but disputed that doing so had proximately caused his death. The jury returned a verdict in favor of CCF, finding that Antoine had not proven to a reasonable degree of medical probability that CCF's negligence had directly and proximately caused Michael's death.

{¶ 10} Appellant appealed, raising the following assignments of error:

> 1. The trial court erred in granting partial summary judgment against the survivorship claim by holding that Appellant's timely written notice, actually received and acknowledged by Appellee's law department, was ineffective because it was not transmitted by USPS certified mail.

2. The trial court abused its discretion and erred as a matter of law in granting Appellee's motion in limine to categorically preclude any loss-of-chance claim, despite Roberts-compliant testimony.

## II. Law and Analysis

### A. Assignment of Error No. 1 — the Statute of Limitations Regarding Antoine's Medical-Negligence Survivorship Claim

{¶ 11} Appellant asserts that the trial court erred by granting CCF's motion for partial summary judgment and dismissing the medical-negligence survivorship claim pled in Count 1 of the complaint. According to Appellant, Antoine's counsel's email representation to CCF that he was considering bringing medical claims related to Michael's death and CCF's email acknowledging receipt thereof were sufficient to extend the one-year limitations period for such claims by an additional 180 days under R.C. 2305.113(B).[2] We disagree.

{¶ 12} "Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law." *Madaras v. Applebee's Neighborhood Grill & Bar*, 2025-Ohio-169, ¶ 12 (8th Dist.), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶ 13} "'We review an appeal from summary judgment de novo.'" *Anderson v. Mitchell*, 2014-Ohio-1058, ¶ 4 (8th Dist.), quoting *Grafton* at 105. "'De novo

---

[2] Appellant argues that Antoine commenced his medical-negligence survivorship claim within the applicable limitations period by suing CCF on April 22, 2022, less than one year and 180 days after Michael's death on December 4, 2020.

review encompasses an independent examination of the record and law without deference to the underlying decision.'" *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, ¶ 48 (8th Dist.), quoting *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 2017-Ohio-1443, ¶ 22 (8th Dist.).

{¶ 14} R.C. 2305.113(A) establishes the limitations period for medical actions, stating that "an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued." The parties do not dispute that the dismissed claim related to the care that Michael received while recovering from his hip surgery in CCF's hospital and is a medical claim under this provision.

{¶ 15} R.C. 2305.113(B)(1) allows for the one-year limitations period for medical claims to be extended by 180 days if, prior to the expiration of the one-year period, a claimant "gives to the person who is the subject of [the] claim written notice that the claimant is considering bringing an action upon that claim." R.C. 2305.113(B)(2) establishes additional requirements for such notice, stating that "a claimant shall give [the written notice described in division (B)(1)] by sending it by certified mail, return receipt requested," addressed to any of several listed recipients.

{¶ 16} Regarding the requirement in R.C. 2305.113(B)(2) that a claimant "shall give" notice by certified mail, this court has "acknowledged the principle that 'shall means shall' and shall is a 'word of command.'" *State v. Walker*, 2021-Ohio-580, ¶ 36 (8th Dist.), quoting *State v. Brooks*, 2020-Ohio-3826, ¶ 7 (8th Dist.). The

dictionary defines "shall," in part, as a word "used in laws, regulations, or directives to express what is mandatory." Merriam-Webster Online, https://www.merriam-webster.com/dictionary/shall (accessed February 18, 2026). [https://perma.cc/RUP3-QHYR]. *See Finger v. Liberty Mut. Personal Ins. Co.*, 2023-Ohio-2308, ¶ 33 (8th Dist.), quoting *Commercial Intertech Corp. v. Guyan Internatl. Inc.*, 2001 Ohio App. LEXIS 1556, *5 (11th Dist. Mar. 30, 2001) ("A dictionary definition 'is a reliable source for finding the plain and ordinary meaning of a word.'"). Appellant has proffered no interpretation of R.C. 2305.113(B)(2) suggesting that the certified-mail requirement is permissive, arguing instead that the defense waived this requirement by participating in this litigation. Appellant also argues that CCF received actual notice regarding counsel's investigation of claims, demonstrated by CCF's reply email.

{¶ 17} We are not persuaded by Appellant's argument that the medical-negligence survivorship claim was commenced within the applicable limitations period. In a recent case, the Ohio Supreme Court considered a similar issue and affirmed dismissal of medical claims that it found a plaintiff had commenced after the one-year limitations period in R.C. 2305.113(A) had passed. *See Ackman v. Mercy Health W. Hosp., L.L.C*, 2024-Ohio-3159. In *Ackman*, the Court addressed whether a party waives defenses related to insufficient service through participation in litigation, answering in the negative. *Id.* at ¶ 7. The plaintiff in *Ackman* failed to perfect service of his complaint on a doctor; nonetheless, the doctor, after filing an answer that included affirmative defenses related to insufficiency of process,

participated in the subsequent litigation. *Id.* at ¶ 4-5. After the applicable limitations periods had passed, the doctor successfully moved for summary judgment based on insufficient service of process. *Id.* at ¶ 6. The Court rejected plaintiff-appellant's arguments that he commenced suit within the applicable limitations period where "the purpose of service — notice — was achieved." *Id.* at ¶ 18. The Court reasoned that, "if notice was the only reason for service, our rule allowing the defense of insufficiency of service of process to be asserted in an answer would be illogical because the assertion of that defense would be proof that the defendant had notice and the defense would necessarily fail." *Id.* The Court's ruling in *Ackman* indicates that a defendant's having actual notice of medical claims does not protect a plaintiff from dismissal of those claims where plaintiff has not strictly complied with service rules before the limitations period expires.

{¶ 18} In light of the foregoing, we find that the court did not err by granting CCF partial summary judgment on the basis that the medical-negligence survivorship claim was commenced more than one year after Michael's death. We acknowledge that the undisputed evidence indicates that, less than a year after Michael died, Appellant's counsel informed CCF that he was considering bringing medical claims related to Michael's death. We also acknowledge that an agent of CCF sent Appellant's counsel a reply email that confirmed receipt of this information. However, we find that the email notice of potential claims was not sufficient under R.C. 2305.113(B)(1) to extend the limitations period. The statute prescribes strict requirements on how notice must be made to extend the limitations

period, which Appellant failed to follow. As a result, the one-year limitations period, which began to run on December 4, 2020, the date of Michael's death, expired before Appellant commenced the medical-negligence survivorship claim. Further, CCF preserved its statute-of-limitations affirmative defense by asserting it in its answer.

{¶ 19} Lastly, we find this case to be distinct from *Wiltz v. Cleveland Clinic*, 2021-Ohio-62 (8th Dist.), which Appellant cites for the proposition that a defendant's actual receipt of notice is sufficient to extend the limitations period under R.C. 2305.113(B). The facts of *Wiltz* occurred before the Ohio General Assembly amended R.C. 2305.113(B) to require that notice of a potential medical claim be sent by certified mail. *See* R.C. 2305.113(B) (effective Jan. 21, 2018) (providing that "written notice" is sufficient to extend the limitations period for medical claims by 180 days). Further, *Wiltz* does not identify the method of service that the plaintiffs in that case used to provide notice that they were investigating potential claims.

{¶ 20} The court properly granted CCF partial summary judgment, dismissing the medical-negligence survivorship claim in Count 1. Accordingly, assignment of error No. 1 is overruled.

### B. Assignment of Error No. 2 — Exclusion of Expert Testimony in Support of a Loss-of-Chance Theory

{¶ 21} Appellant asserts that the trial court erred by granting CCF's motion in limine, precluding testimony that CCF's failure to maintain working heart monitors deprived Michael of a less-than-even chance of recovery from his cardiac

arrest. Appellant argues that such testimony was within the scope of Dr. Grundy's expert report and should have been permitted at trial. We disagree.

{¶ 22} We review a trial court's decisions regarding motions in limine and the admissibility of expert testimony for abuse of discretion. *180 Degree Solutions L.L.C. v. Metron Nutraceuticals, L.L.C.*, 2021-Ohio-2769, ¶ 57 (8th Dist.); *accord Halenar v. Ameritech-Ohio SBC/Ameritech*, 2011-Ohio-2030, ¶ 28 (8th Dist.). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *W.A.F.P., Inc. v. Sky Fuel Inc.*, 2024-Ohio-3297, ¶ 13 (8th Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 23} Appellant's complaint is based on the uncontested allegation that CCF breached the standard of medical care. To raise a medical claim, a plaintiff usually "must prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence." *Roberts v. Ohio Permanente Med. Group*, 76 Ohio St.3d 483, 485 (1996), citing *Shumaker v. Oliver B. Cannon & Sons, Inc.* 28 Ohio St.3d 367 (1986).

{¶ 24} By contrast, "the loss of chance theory, which compensates an injured plaintiff for his or her diminished chance of recovery or survival," allows a plaintiff to bring a medical claim "even though the possibility of survival or recovery is less

than probable." *Roberts* at *id.* "In order to maintain an action for the loss of a less-than-even chance of recovery or survival, the plaintiff must present expert medical testimony showing that the health care provider's negligent act or omission increased the risk of harm to the plaintiff." *Id.* at 488. A loss-of-chance claim "does not require specific evidence of the percentage of chance lost in order to establish proximate cause." *Thomas v. Univ. Hosps. of Cleveland*, 2008-Ohio-6471, ¶ 33 (8th Dist.). However, this court has recognized that the doctrine of loss of chance "applies only to those patients who had less than even chance of survival . . . ." *Liotta v. Rainey*, 2000 Ohio App. LEXIS 5475, *11 (8th Dist. Nov. 22, 2000).

{¶ 25} Among the cases cited by Appellant, the following are instructive here as to whether an expert opinion is sufficient to establish a loss-of-chance claim. In *Geesaman v. St. Rita's Med. Ctr.*, 2009-Ohio-3931 (3d Dist.), the court of appeals found that the trial court erred in failing to instruct the jury on loss of chance where "plaintiff presented evidence that the decedent would have had a 28[] percent chance of survival had proper and timely care been rendered but that the defendants' negligence decreased that chance of survival to zero." *Id.* at ¶ 21. *Compare Liotta* at *5 (court did not err in granting directed verdict in favor of defendant as to loss-of-chance claim where, despite medical expert's testimony that defendant's conduct decreased plaintiff's likelihood of survival, such likelihood remained 50-60 percent that is, greater than even.) In *Liotta*, this court found, "At no time did [plaintiff's medical expert witness] testify that [plaintiff] had a less than

even chance of recovery. While the chance of recovery did decrease, th[e] decrease falls within the traditional tort theories of malpractice." *Id.* at *12.

{¶ 26} The opinions of expert witnesses must be laid out in a report. The Ohio Rules of Civil Procedure provide that the "reports of expert witnesses expected to be called by each party shall be exchanged with all other parties." Civ.R. 26(B)(7)(b). "An expert will not be permitted to testify or provide opinions on matters not disclosed in his or her report." Civ.R. 26(B)(7)(c). *See Holly v. Greater Cleveland Regional Transit Auth.*, 2022-Ohio-3236, ¶ 21, 25 (8th Dist.) (Trial court did not abuse its discretion in granting motion in limine to preclude plaintiff's treating physician from testifying, where physicians written evaluations of plaintiff "did not opine as to causality of appellee's bilateral carpal tunnel syndrome" and physician's supplemental report on that topic was not timely provided to opposing counsel.). *Compare O'Connor v. Cleveland Clinic Found.*, 2005-Ohio-2328, ¶ 23 (8th Dist.) (Trial court abused its discretion by allowing doctor "to offer a new opinion on the possible cause of [a] cautery burn" that had not been disclosed in an expert report or in supplements to doctor's deposition or interrogatories.).

{¶ 27} We find that the court did not abuse its discretion by granting CCF's motion in limine based on its conclusion that Dr. Grundy did not opine, in his expert report, that CCF's failure to monitor Michael deprived him of a less-than-even chance of recovery from his cardiac arrest. Regarding Michael's recovery from his hip surgery, the report opines, "Even if we accept 46 months as an upper boundary for a 50% chance of survival for Mr. Francis, it is still more likely than not that he

had a life expectancy of between three and four additional years." This conclusion appears to be based on another doctor's discussion of risk factors that Michael had exhibited before surgery, including that he was receiving hemodialysis. Neither this analysis of risk factors that Michael exhibited before surgery nor Dr. Grundy's discussion thereof address Michael's likelihood of surviving cardiac arrest during recovery.

{¶ 28} In his report, Dr. Grundy concluded that "it is more likely than not that by failing to carry out their own physicians' monitoring orders, the substandard care delivered . . . at the Cleveland Clinic took this chance at life from Mr. Francis." Dr. Grundy also articulated that "had Cleveland Clinic carried out Mr. Francis' appropriately ordered cardiac and oxygen monitoring . . . Mr. Francis' decline and death could have *likely* been prevented." (Emphasis added.) As in *Liotta*, Dr. Grundy's report never offered the opinion that Michael's chance of survival was less than 50 percent at the time of CCF's negligence. Instead, the report presented Dr. Grundy's opinion in terms of traditional medical negligence.

{¶ 29} Further, though Dr. Grundy's report discusses a person's general declining blood-oxygen saturation levels at different time increments during cardiac arrest, it does not address whether proper monitoring would have allowed CCF personnel to respond to Michael's arrest more quickly or the likelihood that any subsequent life-saving measures that could have been rendered would have been successful. As such, we cannot say that the court abused its discretion by concluding

that Dr. Grundy did not opine in his report that CCF's negligent monitoring deprived Michael of a less-than-even chance of recovery from cardiac arrest.

{¶ 30} Lastly, we note that Appellant argues that expert testimony sufficient to support a medical claim may be introduced through cross-examination. Appellant directs us to testimony, given by CCF witnesses during cross-examination, that purportedly addresses whether CCF's failure to monitor Michael decreased his likelihood of surviving cardiac arrest. However, such testimony is not pertinent to Appellant's assignment of error, which is limited to whether the court erred in granting CCF's pretrial motion in limine, precluding the Appellant from introducing his own expert testimony about loss of chance. *See Yagour Group, LLC v. Ciptak*, 2024-Ohio-73, ¶ 31 (8th Dist.), quoting *Hamid v. Univ. Manors, Ltd.,* 2021-Ohio-2115, ¶ 16 (10th Dist.), quoting *Huntington Natl. Bank v. Burda*, 2009-Ohio-1752, ¶ 21 (10th Dist.) ("Appellate courts rule on assignments of error, "'not mere arguments.'"").

{¶ 31} We do not find that the court abused its discretion by granting CCF's motion in limine. Accordingly, assignment of error No. 2 is overruled.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
DEENA R. CALABRESE, J., CONCUR